DAVID SANDOZ, Administrator of the Succession of Jean Pierre Décuir, *v.* LOUIS GARY.

The plaintiff in a petitory action can recover only on the strength of his own title.

The *just title* required to enable a possessor to acquire property in a slave by the prescription of five years where the parties are present, and by ten years between absentees, must be one derived from a person whom the possessor honestly believed to be the real owner: and it must be such as would, in its nature, suffice to transfer the property, if derived from the real owner. C. C. 3437, 3439, 3450, 3451.

A slave may be acquired by the prescription of fifteen years without any title on the part of the possessor, and whether he be in good faith or not, and this prescription runs against absentees as well as residents; but the possession must be continous, uninterrupted, public, unequivocal, and *animo domini.* C. C. 3465, 3466.

A donation of a slave made to a concubine, was not illegal under the Code of 1808. Book 3, tit. 2, art. 10.

APPEAL from the District Court of St. Martin, *Boyce,* J.

MORPHY, J.* This is a petitory action, in which the plaintiff sues to recover the slave Betcy and her children, as the property of the estate of the late Jean Pierre Décuir, of which he is the administrator. He avers that the defendant, without any legal right or title, detains these slaves in his possession, and prays that he may be decreed to surrender them to him, and to account to the estate for their hire. The defendant pleaded the general issue, averring that he was the legal owner of the slaves claimed, under a good and valid title, derived from Josephine Décuir, a free woman of color, now residing in the kingdom of France, whom he prayed to have cited in warranty, through a curator *ad hoc.* He further pleaded prescription, and that if ever Jean Pierre Décuir sold, claimed, or took possession of the slave Betcy, he acted fraudulently, and in bad

* SIMON, J., having been of counsel in this case, did not sit on its trial.

faith, as he well knew that she belonged to Josephine, whose surety he was when she purchased said slave; that his pretensions, whether based on title or possession, are tainted with fraud, and that neither he, nor his heirs, can set up any right or title to the said slave. . The defendant has appealed from a judgment rendered against him below.

The record shows that, on the 19th of May, 1809, Jean Pierre Décuir, emancipated a mulatto girl named Josephine, who was his concubine, and who continued to live with him up to the time of his death. On the 15th of April, 1818, Josephine purchased the slave Betcy at a probate sale of the community property of Jacques J. Ozeune, for $1100, and Jean Pierre Décuir became her surety, and signed as such the *procès-verbal* of the adjudication. From the time of the purchase, Betcy remained on the plantation where Josephine and Décuir were living together, in the parish of St. Martin, when on the 10th of May, 1823, Jean Pierre Décuir sold this slave and her children to one Isidore Broussard, of the parish of Lafayette, for the sum of $1500. On his vendee's failing to pay a balance due on the price, he had the slaves seized and sold, and became himself the purchaser of them, at the sheriff's sale, on the 23d of April, 1824. Betcy returned to the plantation in the parish of St. Martin. About the year 1825, Josephine and Décuir left the parish to go to New Orleans, and thence to France, leaving Betcy on the land which had been sold some years before by Décuir to Antoine Abat. It was sold by Abat to Seghers, in March, 1832, and, in May following, Seghers sold it to the present defendant. During all this time, Betcy and her children remained on the place. Some years after the death of Décuir, one François Beauvais, qualified as the administrator of his estate, and, on the 27th of October, 1832, caused an inventory and appraisement to be made of Betcy and her children, as belonging to the estate. From that time, although these slaves continued to live on defendant's land, Beauvais exercised acts of ownership and possession over them. In 1834, Josephine, who had returned from France, brought suit against Beauvais, as administrator, claiming the slaves in dispute as her's; but, in November, 1836, she discontinued her suit. The reason

which induced her to dismiss her action, does not appear in the record, but on the 24th of April, 1838, she transferred all her rights, title and interest in and to these slaves to Louis Gary, who has continued in possession of them up to the institution of the present suit, which was brought on the 31st of March, 1842.

It is well settled that, a plaintiff in a petitory action must exhibit a title in himself, and must recover on the strength of such title.   None has been produced, except the sheriff's sale to Jean Pierre Décuir, which is no title at all, as it is one which he made to himself by wrongfully selling the slave whom he knew to be the property of another person, and by buying her in afterwards at the sale made under executory proceedings instituted by himself against his vendee.   As it cannot be pretended that these proceedings affected in any way the title of Josephine, under whom the defendant holds, it remains to be enquired whether she has lost it by any of the kinds of prescription known to our law, as it is urged on the part of the appellee.   The property of slaves may be acquired by prescription, with or without title.   If the possessor is in good faith, and has a just title, prescription will accrue by a possession of five years, as against a person living in the State, and by one of ten years against an absentee.   The same species of property is acquired by prescription by fifteen years, without any title on the part of the possessor, or whether he be in good faith or not.   Civil Code, arts. 3437, 3438, 3439.

The just title required to enable a possessor to prescribe under it the property of a slave by five or ten years, must be derived from a person whom he honestly believed to be the real owner, and must be such as would, in its nature, be sufficient to transfer the property, if derived from the real owner.   Ibid. arts. 3450, 3451.   From these provisions of law, it is manifest, that the possession of Décuir, or of his representatives, was never accompanied with good faith, nor founded on a just title. He knew that he was without any right or title to the slave Betcy, and that she belonged to Josephine, for whom he had become surety at the time of her purchase,   If then, Décuir, or his estate, has acquired any right to the slaves in dispute, it must

be by the long prescription of fifteen years, which requires neither title nor possession in good faith; but this prescription, which runs both against residents of the State and absentees, must be continuous and uninterrupted, during all that time ; it must, moreover, be public, unequivocal, and *animo domini.* Ibid. arts. 3465, 3466.

The evidence does not satisfy us, that J. P. Décuir, or his heirs, ever had the possession required by the above cited articles of the Code. From 1818 to 1825, during which time, with a short interruption, she resided on the plantation, where both Josephine and Décuir were living together, she must be considered as having been possessed by Josephine, who held the legal title to her ; and, in point of fact, the evidence shows that during that period, Josephine exercised over her acts of ownership, and that the slave worked on the plantation almost exclusively for her. After that time, and for several years, she was in the corporeal possession of neither; they had both left the place, which was no longer the property of Décuir. All the slaves belonging to the latter were removed to New Orleans, except Betcy and her children, who remained there until the defendant, Gary, purchased the plantation, in May, 1852. Décuir died about the year 1826, and his heirs do not appear to have exercised any acts of ownership or possession over the slaves in dispute, until 1832, when Beauvais had them inventoried as belonging to Décuir's estate, and began to exercise on them some acts of ownership. Thus it appears that, even should we consider Beauvais as having possessed them for the estate from that period, there would not be, at the inception of this suit, a sufficient length of time to prescribe without title or good faith; but it appears that, at the death of Beauvais, which happened about the year 1837, the estate of Décuir again remained unrepresented for several years, and that the slaves continued to live on the plantation of the defendant, who, in 1838, acquired from Josephine all her right, title and interest in them.. It is clear then that the plaintiff, who has shown no legal title to these slaves, has acquired none by prescription. The circumstances disclosed by the record, in relation to Josephine's neglect of her rights, her silence when Décuir sold

Betcy, the state of concubinage in which she lived with him, and her discontinuance of the suit brought in 1835, cannot, in our opinion, destroy or affect her title in a contest with the heirs of said Décuir. They cannot have greater rights than their ancestor. He would not surely have been permitted to avail himself of his own wrong, nor would he have been listened to, had he pretended that the adjudication made to Josephine, in 1818, was for his account. If it disguised a donation of this slave by Décuir to his concubine, as it is urged by the appellee's counsel, such a donation was not prohibited by the law in force at the time it was made. Code of 1808, p. 210, art. 10.

It is, therefore, ordered and decreed, that the judgment of the District Court be reversed, and that ours be for the defendant, with costs in both courts.

*Voorhies,* for the plaintiff.

*I. E. Morse,* for the appellant.