## STROUD et al. v. HUMBLE, Sheriff, et al.

Plaintiff, a married woman, purchased certain property in her own name, at a probate sale of the succession of her father, made for the payment of debts and to effect a partition, the price of which was less than her share in the succession. The sale of the property of the succession was directed to be made for one-tenth cash, and the balance on credit. The act of sale declared that the price had been "in hand paid." The succession was solvent. In a partition subsequently made between the heirs, a note given by the plaintiff for the credit portion of the price was given up to her, as a payment *pro tanto* on her share in the succession. *Held*, that the interest of plaintiff in the succession of her father being paraphernal, the property so purchased by her must also be considered paraphernal, being an exception to the general rule that property purchased during marriage, whether in the name of the husband or wife, belongs to the community; and that the law, in this respect, was the same before the promulgation of the Civil Code of 1825 that it is at present.

One whose property has been seized under execution against another, may recover damages against the sheriff and plaintiff in execution, *in solido*.

APPEAL from the District Court of Caldwell, *Farrar*, J. *Purvis* and *Mc-Guire*, for the plaintiffs. *Garrett*, for the appellants. The judgment of the court was pronounced by

SLIDELL, J. This suit was before us at our last term. and was then remanded for further proceedings. See 1 An. Rep. 310. At the trial on the merits, the title of the plaintiffs as the heirs of their mother, *Sally Grady*, the deceased wife of *Stroud*, to the female slave and her issue, which had been seized upon executions against *William Stroud*, their father, was recognised, and judgment was also given for $150 as damages. From this judgment the sheriff, and his co-defendants, have appealed. It is submitted by the counsel for the defendants that the only issues before the court are: 1st. The title of the plaintiffs, as the heirs of *Sally Grady*, deceased, to the property. 2d. Whether, if they establish this, they have shown themselves entitled to the damages awarded by the court.

Upon the first point it is necessary to premise by a brief statement of the facts. It is conceded by the defendants' counsel that the negro woman *Betcy*, who has been seized under execution, belonged to the succession of *John Grady*, deceased; and that the children seized are her issue; that the plaintiffs are the children of *Sally Grady*, and that *Sally Grady* is the daughter of *John Grady*. But the contest as presented by the argument for the defendants is, as to the legal consequences of the following facts: After *John Grady's* death, his testamentary executor and one of his children presented a petition to the court of Probates in which the succession had been opened, stating that there were considerable debts which the executor had not funds to pay, and praying that the estate of the deceased be sold for the purpose of paying debts, and making a partition among the co-heirs; and that the terms of sale should be ten per cent cash, and the residue on a credit. It is evident that the estate was abundantly solvent, although in want of cash funds to pay debts; for we find that the debts, executor's commissions, and the costs, only absorbed about one-fourth of the proceeds of sale. The other heirs, and among them *Sarah Stroud*, the mother of the plaintiffs, accepted service of the petition, waived notice, and concurred in the prayer of the petitioners. A sale was accordingly ordered by the judge.

The decree was: "Let the prayer of the petitioner be granted, and let a sale be made as prayed for." The *procès-verbal* of the sale, which was conducted by the parish judge himself, sets forth that it was made for the purpose of paying debts, and making a partition among the heirs. The terms announced were for slaves, one-tenth cash, and the balance on the 1st January ensuing. It declares that the negro *Betcy* was adjudged to *Sarah Stroud*, the last and highest bidder, for the sum of $650, "who signs hereto by consent of her husband, who also signs agreeing to consent to the terms of sale; and *John Sims* signs as her surety." On the same day, before the same parish judge, the executor executed a deed of sale of the slave to *Sarah Stroud*, by consent of the husband. Both husband and wife signed this deed. A few months after this, and in the same year, a partition was made among the heirs, which is of record with the *mortuaria*. In this partition *Sarah Stroud* and her husband are stated to be represented by an attorney in fact, and the instrument states the share of each heir at $1,033 59, and that *William Stroud*, who has married *Sarah Grady*, has received $1,033 59, in the note and mortgage of himself and wife for $585, the note and mortgage of *Wood* and *Brown* for $414, and from a co-heir $54 in cash.

It is said, and, as we think, correctly, that the rights of *Sarah Stroud* under these facts, must be determined by our system of laws and jurisprudence, as existing before the Code of 1825 took effect. This sale was made in January, 1825. It is not necessary, in the view which we have taken of this case, to say whether they are to be exclusively determined by that standard. The settlement by the heirs, in December, 1825, being subsequent to the promulgation of the new Code, the two systems would perhaps be considered as both operating upon the subject matter to a certain extent. But we do not think that, under either system, the rights of *Sarah Stroud* would be different.

We are of opinion that, as the interest of *Sarah Stroud* as heir in the succession of her father was clearly paraphernal, the slave purchased under the circumstances at the probate sale was paraphernal also, and did not fall into the community existing between her and *William Stroud*. The sale was made to her, in her name. The thing sold was sold not only to pay debts, but to effect a partition of a succession of which she was an heir; the purchase was for little more than half of her share as heir. The counsel for the defendants has laid much stress upon the fact, that there was, by the terms of sale, a cash payment; and has urged that, there is no proof that *Sarah Stroud* paid the money; and that the law, in the absence of such proof, will presume it was paid by the husband, and consequently, in legal contemplation, by the community. But he has overlooked the fact that the deed from the executor, executed on the same day as the probate sale, asserts that the price was in hand paid to him by *Sarah Stroud*. The whole current of authority, both under the existing Code and the system of laws which preceded it, sanctioned the opinion that the title, vested in *Sarah Stroud* by these proceedings, was paraphernal. In *Savenat* v. *Le Breton*, 1 La. 520, the case was weaker than this, for the conveyance, on its face, was to the husband, who, however, acknowledged in the act, that he received it as a part of the plaintiff's paraphernal estate. Proof was admitted, apparently in part oral, that the wife's share in the succession of her parents had been deposited in money in the hands of an aunt, and that the aunt conveyed the property to the husband in discharge of this debt. The case was stated as being decided under the spanish laws; but Mathews, Justice, in delivering the opinion, intimates that the doctrine of matrimonial rights, as es-

STROUD
v.
HUMBLE.

tablished by our Codes, is more favorable to the wife. In *Newsom* v. *Adams*, 3 La. 231, it was considered that on this subject there was no conflict between our former and present systems. The cases under our present Code are numerous and conclusive, that such a purchase stamps the property as paraphernal. The leading cases are *Dominguez* v. *Lee*, 17 La. 301. *Terrell* v. *Cutrer*, 1 Rob. 368. See also *Maussard* v. *Her Husband*, 11 Rob. 446. *Rousse* v. *Wheeler and wife*, 4 Rob. 118. It is true that the Code of 1808 harmonised with the spanish law, and with the Code of 1825, in the general principle that property acquired by purchase during marriage, whether in the name of the husband or of the wife, belongs to the community. See 11 Rob. 529. But we are not aware of, nor has the counsel cited, any article of the Code of 1808, nor any authority, which establishes that such an acquisition, in the name of the wife, would not fall under a fair and reasonable exception to the general rule.

We do not consider the subsequent settlement made by the heirs as affecting *Sarah Stroud's* title. The title of the slave was in her; its price was less than her share; the act of partition, and the restoration of her note to her was a settlement between the heirs, and did not overthrow the paraphernal acquisition. Neither the husband nor wife so considered it, at the time; and what has been done twenty years ago, in good faith, and in the legal and just exercise of the wife's separate rights as an heir of her father, cannot now be disturbed by the creditors of the husband, and to the detriment of her children.

Upon the question of the allowance of damages, we have been asked by the appellees to increase them, and by the appellants to reduce them. An examination of the testimony has not satisfied us that we ought to disturb the finding of the district judge.                                    *Judgment affirmed.*