(63 South. 114.)

No. 19,107.

CRUSEL v. BROOKS.

(May 20, 1912. On the Merits, Jan. 20, 1913.
On Rehearing, June 30, 1913.)

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR (§ 167*)—RIGHT OF AP-PEAL—WAIVER.

While a litigant cannot reserve a right to appeal while taking a benefit under a judgment, this does not prevent his entering into an arrangement by which, with a view of saving expenses, the parties come together as far as they can agree, but reserve the right to contest the points upon which they cannot agree.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1008–1014; Dec. Dig. § 167.*]

Breaux, C. J., dissenting.

*(Syllabus by the Court.)*

On Rehearing.

2. PARTNERSHIP ACCOUNTING.

Plaintiff and defendant were the owners of an arpent of oil-producing lands in the Jennings oil field. Plaintiff owned one-fourth and defendant three-fourths. They divided the expenses and shared in the profits in proportion to their respective interests in the land. It produced within a small fraction of a million barrels, the whole worth gross about as many dollars.

Plaintiff asked for an accounting, which the defendant has earnestly sought to give. There are many items of debit and credit.

The gross (grand) total was not changed, as it had been agreed upon by parties in interest. Each is taken as correct: Total oil, total money it produced.

3. APPEAL AND ERROR (§ 835*)—REHEARING—PARTNERSHIP—ACCOUNTING.

New issues on rehearing are not favored in pleading and practice.

The amounts already forming part of the grand total are not deducted in accordance with suggestions made on rehearing, as they form part of the general plan of calculation adopted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3241–3243; Dec. Dig. § 835.*]

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Wm. Campbell, Judge.

Action by J. Edward Crusel against R. E. Brooks. A judgment for plaintiff was modified, and plaintiff appeals. Affirmed in part and reversed in part on rehearing.

E. D. Saunders and Foster, Milling, Brian & Saal, all of New Orleans, for appellant. Hampden Story, of Shreveport, and Robert A. John, of Houston, Tex., for appellee.

On Motion to Dismiss the Appeal.

PROVOSTY, J. Plaintiff and defendant agreed to buy and operate jointly a certain acre of oil-producing land, the interest of plaintiff to be one-fourth and that of defendant three-fourths in the property and its proceeds, each to contribute in the same proportion towards the payment of the price. The title was placed temporarily in the name of defendant, and the management was left in his hands. Plaintiff brought the present suit to be recognized as owner of one-fourth of the land, and for an accounting, and also to recover from defendant for 50,000 barrels of oil which he alleges he loaned to defendant for carrying out a certain contract entered into by defendant for their joint account.

Plaintiff's ownership of one-fourth interest was not seriously contested below; but the adjustment of the accounts involved a number of important points upon which the parties differed widely, and a complicated and protracted litigation ensued, in the course of which an enormous record has been piled up.

The court gave judgment in favor of plaintiff for $6,608.14. Defendant filed a motion asking that this judgment be reduced to $1,626.23, or else that a new trial be granted. This reduction was claimed on the ground that, while the court had debited defendant in the account with certain excess royalties that defendant had received, it had not credited him with the return of these excess royalties, or with the money value of the oil transferred in return for these excess royalties. This had been simply an inadvertence on the part of the court, as that point had been made plain on the trial,

and was no longer disputed. As this error would inevitably have had to be rectified on appeal, the plaintiff consented that it be corrected by the trial court. Plaintiff did this by the following pleading:

"Now comes J. Edward Crusel, and for answer to the rule to correct the judgment herein, otherwise to grant a new trial of this case, says:
"That this defendant does not admit and reserves the right to contest on appeal the basis upon which the court has stated the accounts between the parties up to January 1, 1907, but, admitting for the purpose of this rule that such basis is correct, the contentions of the defendant as to errors in the statement of the court are true to this extent."

Plaintiff then appealed from the judgment. Defendant has moved to dismiss the appeal, on the ground that, by thus consenting to the amendment of the judgment in order to avoid a new trial, the plaintiff acquiesced in the judgment.

[1] Far from being an acquiescence, this pleading was expressly the contrary. A litigant cannot reserve a right to appeal while taking a benefit under, or by virtue of, a judgment; but there can be no reason why his consenting to the correction of an error made in his favor should preclude him from seeking relief by appeal as to errors made against him, especially when he has been careful to guard, by an express reservation of his right of appeal, against any supposition of his intending to acquiesce in the judgment.

Pending the present suit, the land and the oil produced and being produced were sequestered. After the judgment the parties, desiring to stop the expenses of the sequestration, and there being no serious dispute as to the plaintiff's ownership of one-fourth of the land and the oil, agreed to take the oil out of the hands of the sequestrator appointed by the court, and to divide it between them according to their interest; and this they did. This, too, is urged by de-

fendant and appellee as a ground of acquiescence.

Such it would most unquestionably be in the absence of an agreement to the contrary, but plaintiff was careful to secure an express agreement that his right of appeal should not be prejudiced. While it is true that by consenting to take a benefit under a judgment a party waives his right of appeal (Flowers v. Hughes, 46 La. Ann. 436, 15 South. 14), there is nothing to prevent litigants from entering into such an arrangement as we have in this case, by which, with a view of saving expenses, the parties come together as far as they can agree, while reserving the right to contest the points upon which they cannot agree. See Michel v. Sheriff, 23 La. Ann. 53; Guenivet v. Perrett, 18 La. Ann. 363.

Appellee contends that, previous to the said agreement by which plaintiff's right of appeal was expressly reserved, plaintiff made a voluntary, gratuitous waiver of his right of appeal. On this point much evidence has been taken since the remand of the case. That evidence shows that at every step plaintiff was solicitous of preserving his right of appeal; it shows that neither he nor his attorneys understood that the right of appeal was at any time being waived or prejudiced. While we are entirely satisfied that the learned counsel for defendant were under the impression that plaintiff had consented to waive his right of appeal, we are equally satisfied that plaintiff never had any intention of doing so, and never did in fact do so. To review the said evidence would serve no useful purpose.

The motion to dismiss the appeal is overruled.

His honor, the CHIEF JUSTICE, dissents.

### On Rehearing.

BREAUX, C. J. [2] The disagreements between plaintiff and defendant in their en-

deavor to settle their account as investors in the Jennings oil field gave rise to many issues of fact and of law.

Since about four years they have brought up a number of appeals to this court, and have not satisfactorily to themselves settled their differences. These decisions are reported in different Annuals.

Years ago plaintiff at first became the owner of an arpent of land in the oil field, known by the name of "Vallee arpent"; in time defendant became the owner of three-fourths of this arpent, and plaintiff of one-fourth. They were to share in proportion to their respective interest in the land in the production of the oil and in the expenses. It was one of the most productive arpents in the oil field. A large quantity of oil was produced and large sums received, as well as expenses incurred in exploiting this land.

Plaintiff and defendant agree in regard to the different items making up the sum of $3,529.99. The defendant does not admit that each item is correct, although he did not particularly object. We take up these items for the purpose of review.

Defendant does finally admit that $4,418.09, claimed by plaintiff, should be allowed, less $895.10. This amount of $4,418.09 consists of the following amounts:

| | |
|---|---|
| 2,405.25 barrels of oil at 97 cents per barrel | $2,333 09 |
| Additional cash credit | 1,955 00 |
| Another credit | 125 00 |
| Another credit | 5 00 |

From this, as before stated, is deducted $895.10.

Taking up the different amounts. Our attention is first attracted to the item consisting of 1,129.81 barrels allowed by the court in error. Both plaintiff and defendant agree as to the error, and for that reason it is eliminated, and for that reason it will only be referred to in establishing balances.

The pipe line charge of 2,664.07 also attracted our attention.

Defendant correctly states that the court

did not deduct 2 per cent. on oil running in the pipe lines from January 1, 1907, to June 1, 1907, on 2,664.07 barrels, although deducttions are allowed on other runs to January 1, 1907.

The contention of the defendant is that it is a customary charge, and really does not cover the actual loss.

Witness Powers, bookkeeper, testified as to the correctness of this item; the defendant also testified. He said that it was a charge usually made by different companies.

Ernest Carroll, another witness, testified substantially to the same effect. So did witness Mattison, who added that it did not cover loss, and that their own line made a deduction of 5 per cent.

The Guffy Petroleum Company makes a similar charge, also the Evangeline Pipe Line.

Plaintiff had paid this charge himself on oil of his own, as stated in his own letters.

We are informed that the oil of Wilkins Number Two of the Brooks Royalty Company, which is the company in which plaintiff and defendant were interested, contained a large percentage of water and sediment rendering it reasonable to charge. This is mentioned by witnesses as reason for the charge in this and other instances. Besides having allowed, as before stated, to January 1, 1907, there is no reason not to allow a similar charge for similar service from January 1, to June 1, 1907. There will be no change made as to this item. That is, the ruling is the same as to this item as it was in regard to pipe line charges heretofore allowed.

The item of 11,832.29 barrels. As to it, the defendant charged in his answer that he delivered that number of barrels of oil to form part of a sale by plaintiff to a Mr. Markham, the total of which was 60,832.97 barrels. The defendant states that he was unable to deliver the balance of 49,000.68 barrels. There was some change in this

contract; differences arose; the plaintiff, strange to say, had already delivered the entire amount to Markham—that is, the 60,-832.97 barrels. The defendant says that plaintiff always declined to receive the oil; i. e., the remainder, 49,000.68. Things remained in that condition. The testimony is not very satisfactory. It does not appear to us with great certainty that the defendant is entitled to these 11,000 and odd barrels; but as it may be that hereafter he will be more successful in proving plaintiff's indebtedness, we leave that amount for future adjustment.

[3] We may as well state further in regard to this claim that it does not appear particularly that it forms part of the grand total. If it does not, it is too late; it being a new item. If it enters into the grand total, as we have reason to think it does, then it was considered in the plan of calculation.

We pass to the next amount, which has received our attention.

Plaintiff had 19,040.12 barrels attached and sold at sheriff's sale; proceeds amounted to $13,338.08. Defendant bonded the attachment and took the property, and in this settlement he accounts for the money and the oil. He received 19,000 barrels and over of oil, and some $13,000 was the price he attempts to account for. There are two objections to that claim: One, that it forms part of the general total and is included in our calculation infra. Second, if not, it is entirely too late to urge it on the rehearing for the first time. We think the first disposes of the question.

We next come to the claim for the loss of oil in the earthen tanks by leakage and evaporation, 51,577.33 barrels. This loss is very seriously questioned by plaintiff.

The judge of the district court in deciding the case, and this court in the decision heretofore handed down, arrived at the conclusion that defendant was not at fault, and that he is entitled to the loss and its deduction. We still agree with that view. In connection with the loss of oil by evaporation and leakage, just referred to, we have this to state:

In one of the objections urged by plaintiff to this claim he urged that defendant ought not to have stored the oil in tanks, and that he should not have gone to the expense of making these tanks at all. The fact is that the defendant had the oil on hand. He had to do something to save it from a complete loss. He for that reason, as we understand, constructed the tanks. Defendant knew of the construction, and he did not object to the storing of the oil. The letters of plaintiff to defendant are very much in point. In them he repeatedly refers to these tanks and their repairing.

The younge lady stenographer who testified in the case said: That plaintiff got credit for his own oil stored in the tanks. That plaintiff must have known where his oil was stored. By the evidence it is made to appear that the loss of these tanks was very, very great. Nearly all of the oil, at one time, of these parties was in these tanks.

At one time plaintiff writes that he had made some payments on these tanks, and that he had a ditch dug around one of them.

The contention of plaintiff on this point further is that a large number of barrels were reported lost by the leakage, and the loss charged to the Vallee arpent, of which he and the defendant were owners, and that other companies were not charged at all.

We can only answer we are informed that all the oil of certain wells in oil fields are stored together, from which it follows that each owner remains the owner of a certain number of barrels, but not of any particular oil; it is all in common, and we understand from this common stock of oil the losses were deducted proportionately; other wells paid their proportion and the Brooks Royalty Company its proportion.

Able counsel for plaintiff submits a cal-

culation to prove his theory that the Brooks Royalty was overcharged in this respect. The evidence before us does not, in our opinion, sustain the view urged by plaintiff. There is an element of uncertainty about the contention that wrong was committed in charging for leakage that renders it impossible, as we think, to charge the defendant successfully with having charged the loss to the Brooks Royalty alone, although other companies were equally indebted.

We will propound the question: Why did not parties produce evidence of bookkeepers and others to prove the serious charge? We have read the evidence of plaintiff, and do not recall that he testified that other companies went scot-free and Brooks Royalty had to pay the loss.

This amount was charged by defendant contemporaneously with the loss. Not the least objection was made. The whole thing was a matter of emergency. Plaintiff shared in the venture benefited by it. It is too late to raise the objection that defendant had no authority.

At the beginning defendant testified that he said to plaintiff that he would not have anything to do with the oil enterprise unless it was agreed that he, defendant, would direct the business. It seems that defendant had considerable experience and had been successful in oil fields. Plaintiff and defendant were well acquainted from the early days of the Jennings oil field. They were on friendly terms and still difficulties arose, which have given rise to a number of issues.

The following is a statement, made separate and apart as far as possible from other statements submitted.

Total gross barrels of oil to January 1, 1907 900,448.14
Net oil for distribution from January 1, to June 1, 1907................................. 46,286.17
Additional from Wilkins to account air pumping, from June to December, 1906... 6,914.88

Total ...................................... 953,649.19
Error in calculation omitted from total........................... 1,129.81
Total barrels for distribution............ 953,649.19

### Credit and Deductions.

| | | |
|---|---|---|
| Transfer to Caffery & Martel... | 69,303.54 | |
| Loss earthen storage............. | 51,577.33 | |
| Pipe line deduction to January 1, 1907............................ | 16,648.71 | |
| Received in excess of royalty.... | 5,695.69 | |
| Joint sales ....................... | 261,410.12 | 404,635.39 |
| | | 549,013.80 |
| Pipe line deductions from January 1, 1907, to June 1, 1907.............................. | | 2,664.07 |
| | | 546,349.73 |
| Crusel's fourth of 546,349.73.................. | | 136,587.43 |
| He has received.............................. | | 129,760.30 |
| | | 6,827.13 |
| Add admitted by Brooks...................... | | 676.53 |
| Total Crusel oil........................... | | 7,503.66 |

### Cash Account.

| | | | | |
|---|---|---|---|---|
| Proceeds 261,410.12 bbls. of oil joint sales.. | | | $47,377 97 | |
| Less pipeage...................... | | $ 6,070 52 | | |
| Disbursements not disputed .......:........ | | $7,422 10 | | |
| Disbursements doubtful .................... | | 200 45 | | |
| Earthen tanks, construction $4,113 00 | | | | |
| Ditching 209 64 | | | | |
| Expenses 1,903 72 | | | | |
| | | $6,226 36 | | |
| Storage ................. | | 3,062 52 | | |
| Pipeage on oil lost in earthen storage ...... | | 1,289 44 | | |
| Gauger ................. | | 60 00 | | |
| Disbursements not disputed ................. | | 1,029 26 | | |
| George's salary........ | | 630 00 | | |
| Ligon " ........ | | 150 00 | | |
| George's expenses...... | | 4 45 | 20,074 58 | 26,145 10 |
| Balance ................................. | | | | $21,232 87 |
| Crusel's one-fourth of $21,232.87............. | | | | $5,308 22 |
| Paid Crusel ................................... | | | | 5,250 00 |
| Credit ............................;.............. | | | | $ 58 22 |
| Paid Sterling Company pipeage of Crusel ........................ | | | $6,488 02 | |
| Less Crusel's credit.............. | | | 1,955 00 | 4,533 02 |
| Dr. ......................................... | | | | $4,474 80 |
| Brooks' three-fourths of $500.00.............. | | | | 375 00 |
| Dr. ......................................... | | | | $4,849 80 |
| Note: 6,226.50 barrels at 97 cents $6,039 70 | | | | |
| 676.53 barrels ...................... | | | 656 23 | |
| Cr. by oil 600.63 barrels........... | | | 582 61 | 7,278 54 |
| | | | | $2,428 74 |

Note: Net credit allowing pipeage on oil lost in earthen storage.

The number of barrels of oil has been fixed, the expenses and the price at which sold, also the portion of each.

The result is above stated.

As relates to the item for 69,303.54 barrels of oil: We have considered the claim, and have not been impressed with it after considering the evidence. The evidence is not satisfactory. The item of 11,838.25 barrels is reserved; if defendant thinks he has a right, it may be sued for; that is for parties to determine.

For reasons assigned the judgments of the district court and of this court heretofore rendered are affirmed to the extent only that right is reserved to sue as stated for the 69,303.54 barrels. Also similar right reserved as to the 11,838.25 barrels.

It is ordered, adjudged, and decreed that in every other respect the judgments heretofore handed down in this and in the district court are avoided, annulled, and reversed.

It is further ordered, adjudged, and decreed that plaintiff have judgment against defendant for the sum of $2,428.74, with interest at the rate of 5 per cent. per annum from judicial demand, and that defendant pay costs in both courts.