McCALEB, Justice.
 

 This is a petitory action brought by three of the four children of the defendant, Mrs. Margaret Frost, widow by first marriage of Robert L. Sanderson and presently the wife of A. C. Frost, to. recover title to certain land situated in Lincoln Parish, which they allege was acquired by their father, Robert L. Sanderson, by inheritance from his father, John L. Sanderson. The fourth child, Mrs. Ruth Sanderson O’Bier, was made a party defendant to the proceeding because, although her interest is identical with that of the plaintiffs, she was unwilling to join with them in the suit against their mother. For the sake of convenience, we will hereafter refer to the four children of Mrs. Frost as parties plaintiff in the case.
 

 The defendant has been in possession of the tract of land since the death of her first husband in 1917 and she concedes that the plaintiffs, as lawful heirs of Robert L. Sanderson, have an undivided one-half interest in the real estate. She denies, however, that they are entitled to be recognized as the sole owners of the property, contending that the land was purchased by her first husband from the succession of his father, John L. Sanderson, during the existence of her marriage with him and that, therefore, the property was at all times community property in which she holds title to an undivided one-half interest.
 

 After a trial of the merits of the case in the District Court, there was judgment in favor of the defendant, Mrs. Frost, recognizing her as the owner of an undivided
 
 *300
 
 one-half interest in the land involved. Plaintiffs have appealed.
 

 The facts of the case are not seriously disputed and we find them to he as follows: John L. Sanderson, the paternal grandfather of the plaintiffs, acquired the tract of land in controversy by purchase in the year 1904 from one Barrett and from that time until the day of his death in 1914, he remained in undisturbed possession of it. He was survived by a son, Robert L. Sanderson, the father of the plaintiffs, a daughter, Mary Ann Sanderson, wife of B. L. Whitman, and a minor granddaughter, Martha Green, the daughter of a predeceased daughter named Martha Sanderson. His succession was opened at his domicile in Jackson Parish in the proceedings entitled “Succession of, John L. Sanderson, Deceased,” No. 258 of the Docket of the Fifth Judicial District Court, Jackson Parish, Louisiana, wherein a last will and testament, in which he had bequeathed the disposable portion of his estate to plaintiffs’ father, Robert L. Sanderson, was probated. Upon a showing that there were debts due by the deceased and that an administration of the estate was necessary, Robert L. Sanderson was duly appointed as dative testamentary executor of the succession. After an inventory of the property of the succession had been taken, the executor, Robert L- Sanderson, filed a petition with the court in which he alleged that it would be necessary to sell the real estate and movable property belonging to the estate in order, to pay the debts of the deceased and the bequests provided for in the will, and the court so ordered. Thereafter, on November 11, 1914, the court, acting upon another petition filed by-Robert L. Sanderson, executor, set aside its ■ former order of sale and entered another order by which the executor was authorized, to sell all of the property belonging to the succession of John L. Sanderson and that of his deceased wife, Amanda Sanderson, “for the purpose of raising money to pay the debts and legacies provided for in the will” and that the personal property be sold, for cash and the real estate on terms of one-half cash and the balance payable in. one, two and three years, retaining a. vendor’s lien and privilege thereon to secure such payments.
 

 In accordance with the order of the court,, Robert L. Sanderson, as executor of the succession, sold all of the property of the deceased and, at the sale, he purchased for-his individual account some of the real, estate owned by the succession, including the tract of land in contest. This tract was. sold to him for the sum of $2,975 and he-paid one-half, or the sum of $1,487.50, in. cash and for the balance of the purchase-price he issued in favor of the succession, three vendor’s lien promissory notes each for the sum of $495.83, payable one, two-- and three years after date.
 

 After the sale of the assets of the succession, Robert L. Sanderson, as executor, filed his procés verbal of the sale and' caused it to be recorded in the office of the-District Court Clerk and the Ex-Officio • Recorder for Jackson Parish, which procés-. verbal reveals that he purchased individually the tract of land here involved. Subsequently, he filed his final account, which; exhibited that all debts of the estate had’.
 
 *302
 
 been paid, and prayed that he be discharged from his trust. In connection with his application to be discharged, ex parte depositions were filed. These depositions, which were made by Robert L. Sanderson and his brother-in-law, Mr. B. L. Whitman, are to the effect that all of the debts of the succession had been fully liquidated; that the inheritances due to the heirs from the succession of the deceased’s wife, Amanda Sanderson, had been paid and that, after disbursement of those obligations, the only remaining assets of the succession were several vendor’s lien notes which had been given by Robert L. Sanderson, individually, and his sister, Mrs. Whitman, in part payment of the purchase price of various portions of real estate which had been bought by them at the succession sale. It was suggested by the deponents that these vendor’s lien notes be cancelled since the legatees had agreed among themselves to accept the various parcels of real' estate purchased by them at the succession sale as payment in full of their legacies. These depositions were filed on March 5, 1915, and on the same day the court entered an order of final discharge of Robert L. Sanderson as executor and authorized the cancellation of his bond.
 

 After Robert L. Sanderson acquired the tract of land at the succession sale of his father, he remained in possession thereof as owner until the date of his death on July 3, 1917. Subsequently, on October 3, 1917, his widow, the defendant in this case, made application in the proceeding entitled “The Tutorship of the Minor Heirs of Robert L. Sanderson, Deceased,” No. 720 of the Docket of the Fourth District Court of Lincoln Parish, and was appointed natural tutrix of his minor children, the plaintiffs herein. An inventory of the effects left by her husband was duly taken which showed that he left personal and real property (including the tract of land in controversy). On this inventory, all of the real estate left by the deceased was listed as his separate property and only the personal property was listed as community property. These proceedings disclose that the defendant, Mrs. Frost, was evidently advised, and she labored under the belief, that the real estate left by her husband was his separate property and that her only interest in it was to preserve it for her children. In truth, it was not until the year 1937, when third parties became interested in the real estate and desired to obtain a mineral lease, that Mrs. Frost employed her present counsel to make an abstract of the title and was informed by them that the property in question belonged to the community which formerly existed between her deceased husband and herself.
 

 On Motion to Dismiss.
 

 Since the appeal has been lodged in this court, the defendant has filed a motion to dismiss it on the ground that the plaintiffs have acquiesced in the judgment below. In support of the allegations of her motion, she has filed an affidavit by one Fred White, who states that, in the month of March, 1940 (subsequent to the rendition of the judgment of the lower court), he purchased a quantity of timber from the property known as R. L. Sanderson Estate; that, while negotiating with Mrs. Frost for the purchase of the timber, he received a
 
 *304
 
 letter from plaintiffs’ counsel wherein it was stated that the plaintiffs should be paid a portion of the purchase price and that, accordingly, he paid to two of the plaintiffs, Mrs. Pilcher and Robbie Sanderson, a portion of the consideration and obtained from them receipts showing the payment. In addition to this, the defendant has also presented a certified copy of an act of servitude which reveals that, on March 8, 1941, she, together with two of the plaintiffs, Mrs. Pilcher and Miss Ruby Sanderson, granted to the'Southern Natural Gas Company a right-of-way, fifty feet in width, over the land in contest.
 

 It is the contention of counsel for Mrs. Frost that, when the plaintiffs accepted a portion of the purchase price of the timber taken off the property and entered into the contract granting a right-of-way over it, these acts constituted an acquiescence in the judgment within the meaning of Article 567 of the Code of Practice. The cases of Crusel v. Brooks, 133 La. 477, 63 So. 114; Myers v. Myers et al., 148 La. 174, 86 So. 727; Ratcliff v. Levin, 139 So. 10, and Flowers v. Hughes, 46 La.Ann. 436, 15 So. 14, are depended upon to sustain the point.
 

 The proposition is not tenable. While it is true that, under Article 567 of the Code of Practice, the party against whom judgment has been rendered cannot appeal where he has acquiesced in it by executing it voluntarily, certain limitations have been recognized in the decisions of this court. Thus, where a judgment is divisible (as is the case here), the acquiescence in one part thereof will not preclude an appeal from the other part (see Milliken v. Rowley, 3 Rob. 253; Duncan v. Wise, 39 La.Ann. 74, 6 So. 13; and Succession of Kaiser, 48 La.Ann. 973, 20 So. 184) and, although there are cases to the contrary, this question was set at rest by this court in the case of Foster & Glassell Co. v. Harrison et al., 173 La. 550, 138 So. 99.
 

 In the last-cited case, the plaintiff brought suit against the defendants for $5,000 less-a credit of $725 previously paid by them. After a trial in the lower court, there was judgment in plaintiff’s favor for $1,748. Further than this, its demands were rejected and it appealed. After the transcript of appeal was lodged in this court, the plaintiff proceeded to execute its judgment against Mrs. Harrison, one of the defendants, by having her property seized under a writ of fieri facias. Thereupon, Mrs. Harrison filed a motion to dismiss the appeal on the ground that plaintiff had acquiesced in the judgment by voluntarily executing it. After a full review of the applicable authorities, including Flowers v. Hughes, supra (upon which the defendant strongly relies), the court, while-recognizing that there was an irreconcilable-conflict in its prior decisions, concluded that the motion to dismiss the appeal was not well' founded. In reaching this result, we cited with approval and adopted the reasoning set forth in the cases of Kittredge v. Grau, 158 La. 154, 103 So. 723; Cory v. Askew, 169 La. 479, 125 So. 455, and Planters’ Bank & Trust Co. v. Savant, 172 La. 464, 134 So. 394, which hold that a person may not be said to acquiesce in a judgment where he-merely abides by so much of it as is in his-favor and that even execution of that part of the judgment of which he does not complain does not constitute acquiescence.
 

 
 *306
 
 In the case at bar, the judgment of the lower court recognizes the defendant as the owner of one-half of the real estate and the plaintiffs as owners of the other half. Plaintiffs appealed for the purpose of being declared the sole owners of the land and the mere fact that, during the pendency of this appeal, they, acting jointly with the defendant, granted a servitude to the Southern Gas Company over the property and ac■cepted a portion of the value of timber cut from it does not constitute a voluntary ac•quiescence in the judgment of the court below within the meaning of Article 567 of the Code of Practice. To take away the right of appeal, there must be an unconditional, voluntary and absolute acquiescence in the judgment on the part of the appellant who must have intended to abandon his right. The motion to dismiss is therefore ■overruled.
 

 On the Merits.
 

 On the merits of the case, the plaintiffs contend that the lower court eryed in holding (1) that the defendant was not es-topped to deny that the tract of land was the separate property of their father, Robert L. Sanderson, and (2) that it also erred in resolving that the land belonged to the community which existed between the defendant and Robert L. Sanderson. We shall discuss these contentions in their respective order.
 

 On the day the case was called to trial in the District Court, the plaintiffs filed a plea of estoppel in which they set forth that the defendant was precluded from contending in her answer that the land was community property because she had, after her husband’s death, judicially confessed, in the proceedings entitled “The Tutorship of the Minor Heirs of Robert L. Sanderson, Deceased,” No. 720 of the Docket of the court, that it was the separate and paraphernal property of her husband and that the plaintiffs had inherited it in full ownership from their father. And they further maintained that their mother was estopped for the reason that she had told them that they were the owners of the property and that she at all times, up to a short time before suit.was filed, recognized that she had no interest whatever in the real estate.
 

 In overruling the plea of estoppel, the District Judge said:
 

 “There is nothing in the record to show that the judicial declarations of Mrs. Frost, referred to in the plea of estoppel, in any wise deceived or misled, or damaged the plaintiffs, and without such showing, it is my opinion that the plea of estoppel is not good.”
 

 And he further stated (and correctly so) that the.law of this State, as laid down in the 'case of Tyler v. Walt et al., 184 La. 659, 167 So. 182, was to the effect that a person is not estopped by his judicial allegations which have neither deceived nor damaged anyone.
 

 A review of the record has satisfied us that the plaintiffs have not been prejudiced or damaged by the allegations of Mrs. Frost in the tutorship proceedings, which were unquestionably founded upon an erroneous conception of her legal rights. Under the circumstances, the judge’s ruling was eminently sound.
 

 
 *308
 
 Counsel for plaintiffs maintains, however, that, where the estoppel is based upon a judicial confession, it must be sustained in the absence of a showing that such confession resulted from an error in fact and that it makes no difference-that the party pleading the estoppel has not been misled or prejudiced by the judicial allegations. In support of this postulation, counsel points to Article 2291 of the Revised Civil Code and the case of Webster v. Smith, 6 La.Ann. 719. Article 2291 of the Code reads as follows:
 

 “The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
 

 “It amounts to full proof against him who has made it.
 

 “It cannot be divided against him.
 

 “It cannot be revoked, unless it be proved to have been made through an error in fact.
 

 “It cannot be revoked on a pretence of an error in law.”
 

 This article has been the subject of much controversy in the earlier decisions of this court where it was indiscriminately and erroneously applied on many occasions with the result that there was a conflict in the jurisprudence. Fortunately, this conflict no longer exists and there has been no difficulty respecting the applicability of the article since the decision in Farley et al. v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, 137, L.R.A.1915A, 200, Ann.Cas.l915C, 717. In that matter, two illegitimate children of one Cox brought a petitory action against the Frost-Johnson Lumber Company and their warrantors, Johnson and Weavor, to be declared the owners of an undivided interest in certain real estate which Johnson and Weaver had acquired by purchase from their mother and their brothers. In their petition, they alleged that their mother was. the surviving widow of their father Cox. The defendants, in answer to the suit, set forth that plaintiffs were the illegitimate children of Cox and that their mother had never been married to him. The plaintiffs thereupon filed a plea of estoppel on the ground that in a previous suit, which had been brought by the lawful widow of Cox, one Mildred Barnes, the defendants had filed an answer in which they had alleged that they owned the property having bought it from the real heirs of Cox, i.e., the mother and brothers of the plaintiffs.
 

 Justice Provosty, as organ of this court,, after recognizing that a hopeless conflict existed in the jurisprudence respecting the-application of the doctrine of judicial estoppel, found that, since the plaintiffs had not been misled or prejudiced by the allegations made in the former suit, the plea of estoppel was not well founded. The court undertook to review at length all of the previous cases-in which a plea of judicial estoppel had been relied upon and came to the conclusion that estoppel, judicial or otherwise, cannot be successfully invoked unless the person pleading it shows that he has been damaged by the inconsistent statement. And, in considering the applicability of- Article 2291 of the Code to the judicial allegations made in the former proceeding, the opinion declares t
 

 “This article, by the way, has reference-only to the judicial confession made in the suit itself, either in the pleadings, or in the
 
 *310
 
 note of evidence, for the purpose of dispensing from taking evidence upon the fact admitted; it has no reference to confessions, or admissions, made in other suits. The latter can be classed only as extrajudicial confessions, or admissions which .are evidence but not conclusive presumptions, or estoppels. That point divided at one time the courts and jurists of France, but may now be said to be practically settled in the sense just stated. The discussion of this point on the French books is Interesting reading, but this opinion is already so long that we will content ourselves with giving here the following taken from Carpentier and Du Saint, Juris. Gen. Vo. Aveu, Nos. 139 and 140, which fairly sums up the result:
 

 “ ‘Does the confession of a party in one suit make complete proof against him in another suit? On this question both the courts and the text-writers are to-day divided. A majority of the latter hold that a confession being merely evidence can only have a relative effect, as is the case with all evidence of a judiciary character; it has, therefore, the force of a legal presumption only in the suits in the course of which it has been made. And so the court of Cassation now holds, unanimously, that the judicial confession can have the force of a legal presumption only in the suit in which it has been made.’
 

 “Said article 229! is an exact translation of article 1356, C.N.”
 

 We therefore hold that, since the allegations contained in the tutorship proceedings, which are relied upon by the plaintiffs as constituting judicial confessions, were made in another proceeding and not in the case at bar, Article 2291 of the Revised Civil Code is without application.
 

 The final question to be determined is whether the property in litigation belonged to the community existing between plaintiffs’ father and Mrs. Frost or whether it was acquired by the former through inheritance and therefore became his separate property. It is the plaintiffs’ contention that, in spite of the fact that the effects of their grandfather, John L. Sanderson, were ordered to be sold by the executor of his estate for the purpose of paying the debts and legacies of the succession, the property was, in truth, sold to effect a partition among the heirs of John L. Sanderson and that the acquisition by their father can only be regarded as an acceptance by him of the tract of land as his share of his father’s estate. In support of this proposition, counsel relies upon the depositions of plaintiffs’ father and Mr. Whitman, which were filed in the succession proceedings of John L. Sanderson at the time their father made application to he discharged as testamentary executor.
 

 We cannot agree with this contention. The succession proceedings of John L. Sanderson show that the property was sold for the purpose of paying, the debts and legacies of the estate, in accordance with an order regularly entered by the court. The procés verbal of the executor reveals that the property was duly advertised and sold at public auction and that plaintiffs’ father, being the highest bidder, acquired the land in suit by payment of one-half of the purchase price in cash and that he gave
 
 *312
 
 his promissory notes for the balance. Since he was an heir of the deceased he had the legal right to make the purchase notwithstanding that he was executor of the estate. See Article 114*6, R.C.C. The mere fact that, after the sale was consummated, it was agreed among the heirs that the promissory notes given by them would be cancelled does not' have the effect of converting the sale into a partition. No stipulation is to be found in the procés verbal exhibiting that plaintiffs’ father purchased the property with his separate funds and, in the absence of such a stipulation, the presumption is conclusive that it belongs to the community. See Succession of Watkins, 156 La. 1000, 101 So. 395; Kittredge v. Grau, 158 La. 154, 170, 103 So. 723; and Schoeffner v. Schoeffner, 163 La. 142, 111 So. 655.
 

 In Kittredge v. Grau [158 La. 170, 103 So. 728], this court, while recognizing that a married woman may assert and prove that property purchased by her during the existence of the community is her separate and paraphernal property, notwithstanding that the deed is silent in that respect, pointed out that the rule is different with respect to the husband. We said:
 

 “But, when a married man buys property in his name, without a stipulation in the deed that it is bought with his separate funds, the presumption in favor of the community is juris et de jure. Joffrion v. Bordelon, 14 La.Ann. 618; Durham v. Williams, 32 La.Ann. 162; Succession of Marrick, 35 La.Ann. 296; Moore v. Stancel, 30 La.Ann. 819; Heirs of Murphy v. Jurey, 39 La.Ann. 785, 2 So. 575; Hero v. Bloch, 44 La.Ann. 1032, 11 So. 821; O’Neil v. Walker, 45 La.Ann. [609], 615, 12 So. 872; Hall v. Toussaint, 52 La.Ann. 1763, 28 So. 304; Succession of Muller, 106 La. 89, 30 So. 329; Succession of Burke, 107 La. 82, 31 So. 391; Sharp v. Zeller, 110 La. 61, 34 So. 129; McWilliams v. Stair, 128 La. 752, 55 So. 343; Succession of Andrus, 131 La. 940, 60 So. 623; Succession of Goll, 156 La. 910, 101 So. 263; Succession of Watkins, 156 La. 1000, 101 So. 395.”
 

 The cases relied upon by counsel for plaintiffs, namely, Stroud v. Humble, 2 La.Ann. 930, and Troxler v. Colley, 33 La.Ann. 425, are not applicable to this matter' because in each of those cases the court, ordered the property to be sold to effect a partition among the heirs.
 

 For the reasons assigned, the judgment appeáled from is affirmed.
 

 Affirmed.