BALTHAZAR MARTIN et al. *v.* SIMEON VALERY MARTIN et al.

The settled construction of Article 1520 of the Civil Code is, that a reservation of the usufruct to the donor of immovable property renders the entire donation radically null, and not simply the illegal reservation of the usufruct.

A party may legally make a partition, either of the whole or of a portion of his estate, among his descendants, during his lifetime, by a notarial act; such a partition is, however, subject to all the formalities and conditions of *donations inter vivos.*

A partition must be considered as one act, although it contain many dispositions, and it cannot subsist for one while it is annulled for another.

An heir who has alienated his share in a partition, or a part of it, is not permitted to bring the action of rescission against such partition, where there has been no fraud, violence, error or lesion.

APPEAL from the District Court of the Parish of St. Martin, *Simon*, J.

*Simon & Gary, C. H. Mouton* and *M. E. Girard*, for plaintiff and appellant. *Deblanc & Fuselier*, for defendant.

BUCHANAN, J. The late *Valery Martin*, deceased in 1858, and his surviving wife, *Célestine Huval*, had issue of their marriage four children, namely, 1st, *Placide Martin*, deceased in 1846; 2d, *Balthazar Martin*; 3d, *André Valsin Martin*; 4th, *Valérien Martin*.

In the year 1847, January 5th, by act before *Bryant*, Notary Public in the parish of St. Martin, *Valery Martin* and his wife, *Célestine Huval*, declared that they had made to their son *Placide*, in his lifetime, a verbal donation of certain enumerated immovable property and slaves, which, with their consent, had been inventoried among the effects of the succession of their said son; that having neglected to make this donation in the legal form of an authentic act, and being desirous to renounce their rights upon said property in favor of the representatives of *Placide*, who are his four children, they, the said *Valery Martin* and wife hereby renounce all right upon the immovables and slaves described, in favor of their grandchildren, heirs of their son *Placide*, (who are the defendants in this suit,) in the same manner as if an act of donation *inter vivos* had been made of the same to their son, as intended.

And in the same act, the said *Valery Martin* and wife made a donation *inter vivos* to their four grandchildren, defendants herein, jointly, of a certain tract of land, with usufruct reserved to the donors during their lives.

The said *Valery Martin* and wife proceed to declare, in the same act, that their desire was, not to favor one of their children to the prejudice of the others, but on the contrary, wished, as much as possible, that full justice should be done them, and consequently, that the strictest equality should be observed between them. To effect this object, said *Valery* and wife had determined to make to each of their three surviving children, *Balthazar, Valsin* and *Valérien*, separately, a donation *inter vivos*, with usufruct to the donors reserved, of immovables and slaves of the same value as those confirmed and given to the heirs of the late *Placide Martin*, and comprised under the articles 1, 2 and 3 of the act, (being the same above referred to.)

Consequently, by the same act, said *Valery Martin* and wife make a donation *inter vivos* to *Balthazar Martin*, of certain land and slaves described particularly; a like donation of other described land and slaves to *Valsin Martin*; and a like donation of other described land and slaves to *Valérien Martin*.

74

MARTIN
v.
MARTIN.

These donations thus made were accepted by *Balthazar, Valsin* and *Valérien ;* by *Madame Rousseau,* married daughter of *Placide Martin,* assisted by her husband ; and by *Valérien Martin,* tutor *ad hoc* of the three minor children of *Placide.*

The lands and slaves confirmed and donated to the several donees by this act were estimated by all the parties at an equal value for each portion, to-wit, $4,830.

The act terminates by the following clause, which we copy at full :

" Les sieur et dame donateurs se réservent conjointement et séparément, pendant leur vie entière, la jouissance exclusive et paisible des terres et des esclaves donnés par le présent acte. Cette jouissance sera sans limite, et ne pourra être interrompue que par le decès de l'un et de l'autre des donateurs. Sont exceptés de la réserve que font les donateurs, les terres et esclaves employés sous les articles 1 et 2 de cet acte." Note, the effects they excepted are those given to *Placide Martin* verbally.

The present suit was brought on the 7th October, 1858, by petition filed in the name of *Balthazar, Valsin* and *Valérien Martin,* demanding that the property of their father's estate (not including certain items of his inventory embraced in the donation of the 5th of January, 1847,) should be sold to pay debts; and that there should be a final settlement and liquidation of *Valery Martin's* succession on certain bases stated. The widow of *Valery Martin,* and the children and heirs of *Placide Martin* were cited to show cause why the prayer of the petition should not be granted.

The defendants, *Simeon Martin, Albert Martin, Owen Martin,* and *Feliciana Martin,* widow of *Jules Rousseau,* children and heirs of *Placide Martin,* have appeared and answered, by pleading that the act of donation *inter vivos* of the 5th January, 1847, is null and void, as containing conventions which violate a prohibitory law. They pray that the property embraced in the donation of the 5th January, 1847, to the petitioners, be declared by the judgment of the court to belong to the succession of *Valery Martin.*

The parties went to trial upon this issue; and, on the trial, it was agreed by counsel that the sole matter to be determined by the court was, the validity of the donation made on the 5th January, 1847.

The District Court decided, that the said act of donation was null, void, and of no effect.

From this decision the plaintiffs have appealed ; and the defendants and appellees, by an answer filed in this court, join in the appeal, and pray that the judgment of the lower court be amended, by decreeing that the donation made to themselves by the late *Valery Martin* on the 5th January, 1847, be declared valid ; and that the rest of the judgment annulling said donation, as made to the other donees, be affirmed.

This cause, as presented to us, is substantially an action for the rescission of a donation, in which the defendants and appellees are plaintiffs, and the original plaintiffs are defendants. The prohibitory law on which the action is based, is Art. 1520 of the Louisiana Code.

" The donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, but cannot reserve it for himself." See also 5 An. 433, 11 An. 705, 12 An. 721.

These repeated decisions have settled the construction of the 1520th Article of the Code to be, that a reserve of the usufruct to the donor renders the dona-

tion radically null; and not, that it is the illegal reservation of usufruct alone which is null, as the appellants contend.

But the appellees argue, that the act of 5th January, 1847, contains donations to themselves which are not affected with the nullity spoken of, and which are, therefore, to be maintained, although the other donations contained in the same act are bad.

We are not able to concur in this view of the rights of the parties. The notarial act in question, which we have set forth above in detail, for the purpose of displaying its real character, was intended to be something more than a mere donation or series of donations. It is in fact a partition among the children of *Valery Martin* and his wife, of the property of their parents, as far as it goes. This is evident from the declarations of the donors therein contained, and copied above, and also from other documents in the record. They might legally make a partition, either of the whole, or of a portion of their property, among their descendants in this form, under Articles 1717, 1718 and 1721 of the Code. It is true, that the partition thus made is subject to all the formalities and conditions of donations *inter vivos*. But, considered as a partition, it is one act, although containing many dispositions. In fact, every partition sets forth, as this does, multifarious details of the objects and their estimation, set off to each co-parcener. And it would not only be a violation of the intention of the donors, but an injustice to the plaintiffs, and contrary to Art. 1450 of the Code, to maintain this act in relation to some of the donees, and set it aside in relation to others. A partition, says the law, cannot subsist for one, and be annulled for another.

The result of a decree annulling this partition *inter vivos* would necessarily be, to restore the property which was comprised in the partition to the succession of *Valery Martin*, and to his surviving wife, the donors. But the counsel of appellants argue that such restitution (of the property donated to the appellees) has become impossible by the act of the appellees; and that they are thereby estopped from demanding a rescission of the partition. And it appears from the evidence in the cause, that a family meeting of the friends of the minors of *Placide Martin* was called to deliberate upon the necessity and the terms of a sale to effect a partition of the estate of their father, which partition had been sued for by the married heir; that the family duly convoked gave their opinion that the property of the succession could not be divided in kind, and advised the public sale of all the property of the succession on a credit of one, two and three years; that the proceedings of the family meeting were homologated, and the sale ordered accordingly; and finally, that the property of the succession of *Placide Martin* was sold in the manner and on the terms mentioned, including the slaves which were verbally given by *Valery Martin* to *Placide* in his lifetime and confirmed to his children, without the reservation of usufruct, by the act of 5th January, 1847. The record also shows, that an account was rendered to the heirs of *Placide Martin*, of the proceeds of those sales; and their written receipts and discharges to their tutor and administrator are in the record.

With this evidence before us, we think the action of the appellees to rescind the partition of the 5th January, 1847, cannot be maintained. Article 1448 of the Code bars this action to an heir who has alienated his share in the partition, or a part of it, even for fraud or violence, if the alienation was made subsequent to the discovery of the fraud, or the cessation of the violence. *A fortiori* must it operate as a bar when there has been no fraud, violence, error, or even lesion.

It is, therefore, adjudged and decreed, that the judgment of the District Court

be reversed; that the demand in rescission of the act of donation and partition, of the 5th January, 1847, formed by the appellees in their answer to this suit, be rejected, and that the appellees pay costs in both courts.