## ILLINOIS CENT. R. CO. *v.* SHAW.

[90 South. 229.  No. 22413.]

1. CARRIERS. *Where bill of lading excused carrier from liability except as warehouseman forty-eight hours after notice, time runs from receipt of notice.*

     Where a bill of lading provides "for loss, damage or delay, caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of arrival of the property at destination has been duly sent or given, the carrier's liability shall be that of warehouseman only," the forty-eight hours does not begin until the receipt by the consignee of the notice.

2. CARRIERS. *Consignee's request to mail notice of arrival of goods held not to make postal department consignee's agent.*

     A request of the carrier by a consignee to mail to him the notice of the arrival of goods provided for in the bill of lading on which they were shipped does not make the postal department the consignee's agent for the receipt of the notice.

APPEAL from circuit court of Montgomery county.
HON. T. L. LAMB, Judge.

Action by J. H. Shaw against the Illinois Central Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*May, Saunders & McLaurin,* for appellant.

The only question to be considered in the decision of this case is that of carrier or warehouseman. In other words, were the duties and obligations of the railroad company towards Shaw that of common carrier or that of warehouseman?

This was an interstate shipment under standard bill of lading, which has for one clause, the following: For loss, damage or delay, caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of arrival

of the property at destination, or at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only.

But aside from the provisions of the bill of lading, the case of *Railroad Company* v. *Hughes* and *Railroad Company* v. *Ferguson & McKinney,* the former reported in 94 Miss. 242; the latter at 52 So. 797, set forth the rule as to where the railroad company's liability as carrier ceases and that of warehouseman begins. The relation of carrier is not extended on account of any distance consignee may live from the depot or on account of any condition of the roads at the time notice is received by him of the arrival of goods, or on account of the health of his family, or on account of any other thing that might reasonably delay him in removing the goods, consigned to him; but the rule applies to all alike, and that rule is: That the liability as carrier ceases when notice of the arrival of goods has been sent and a reasonable time given in which to remove the same, the time being computed as for one living in the community where the depot is situated, (*Railroad Co.* v. *Ferguson & McKinney, supra*).

Further, in the instant case, consignee requested that notice be sent him by mail in a particular manner, thus expressly making the post office his agent for the reception of notice. The notice was sent between four and five o'clock on Thursday afternoon. The depot burned down on Sunday night following, there was no evidence in the statement of fact of any negligence on the part of the railroad company in the burning of the depot and plaintiff does not claim any liability on the part of the railroad company as warehouseman, but bases his claim solely on the ground that the duties of the railroad company were those of a carrier.

In the case of *United Fruit Company* v. *New York & Baltimore Transportation Line,* 8 L. R. A. (New Series) 240, and note, the reasonable time allowed for the removal of goods after notice is fully discussed. It is there decided that if there be a dispute as to facts regarding the

sending of notice, it is a question for the jury, but when all the facts are before the court it is a question for the court to decide as to whether or not a reasonable time has been allowed for the removal of the goods.

In the instant case, the bill of lading provides for forty-eight hours. Plaintiff had longer than that and did not remove the goods. Therefore, the liability of defendant was that of warehouseman and not carrier, and no negligence on the part of the railroad company being shown as to the origin of the fire, we respectfully submit they are not liable to plaintiff for the loss of the goods.

*J. T. Dunn* and *T. N. Gore,* for appellees.

The question to be decided by the court is accurately stated by the appellant in their brief, that is to say were the duties and obligations of the railroad company towards Shaw that of a common carrier or that of a warehouseman?

The facts in this case as agreed by all parties is that the goods arrived at the depot on Thursday afternoon, that notice of the same was sent by mail to the plaintiff, and that the parties had agreed that that should be the method of notice. The rule with reference to the liability of the carrier as carrier is stated in the *Gulf & C. Ry. Co.* v. *Ferguson McKinney, Dry Goods Company,* on page 998, 52nd Southern: "The liability of the carrier as insurer of the goods continues after the arrival of the goods at their destination until notice of the consignee and until the consignee has had a reasonable time in which to remove his goods." All of these things may be reasonably said to be within the terms of contract of carriage. And again: "And it is to be determined with reference to what would be a reasonable time as applies to one residing in the vicinity of the place of delivery." Argument: We plant ourselves squarely upon that decision. That is our law.

1st. The railroad company receives the goods for transportation, safely carries them to their destination, informs

the consignee of their arrival, and affords him a reasonable opportunity to remove them; then its duty and obligation as a carrier are at an end, and if the goods are left in its custody, its liability for subsequent loss is that of a warehouseman only? Note. The case of *Denver* v. *Peterson,* 97 American State. Reports, page 93, under the head of Notice of Arrival of Goods, states the Mississippi doctrine exactly. That is to say, that after the arrival of the goods at the place of destination the railroad company removes them from the cars and informs the consignee of the arrival and after he has informed him, allows him a reasonable time to remove them after notice. Not after he has been given an opportunity to have notice, not after word has been sent to him, but after he has received. the notice.

To hold that the mere mailing of a notice in a post office without giving the man an opportunity to get the notice would in most instances be the same as if he had given him no notice. The true rule we would respectfully state with reference to a notice that was mailed would be to give the man the opportunity to receive it in due course of mail, and that he must then remove the goods within a reasonable time as of one who lived in the vicinity of the depot.

The point of the whole matter being that after the man has received notice, that he has a reasonable time in which to remove, as if he lived near or in the vicinity of the depot. If he had lived within three hundred yards of the depot he would have had the right to notice of the arrival of the goods and would have been entitled to a reasonable time thereafter to have removed his goods. Notice is the condition precedent and the reception of notice is the condition precedent to the commencement of a reasonable time within which the consignee has the right to remove his goods. In other words, under the Mississippi rule, the man must be notified of the arrival of the freight before the reasonable time to remove begins. *St. L., B. & M. Ry. Co.* v. *Hicks,* 158 S. W. 192, 165 Ala. 429, Note 38 (a).

We do not mean to argue that a man who is notified by agreement by mail would have a right not to receive his mail or to put himself in the attitude where he could not be notified, and then claim non-notice, but if he has been notified by mail, either by agreement or otherwise and especially if by agreement, then before he would have any notice of the arrival he would have to have an opportunity to get the notice in the due course of mail, else the obligation to notify would be entirely abrogated. *Ry. Co.* v. *Hicks, supra.*

Now, in this case, it is shown by the agreed state of facts that this man did not and could not receive the notice until four or five o'clock on Saturday afternoon; then if he had lived in Duck Hill or in the vicinity, would it have been reasonable to have required him to have gotten his freight out of the depot Saturday night? The next day was Sunday and a holiday and it burned Sunday night.

This question of notice is one of the most important questions to consignees of freight that is in the law. He has no more rights whether he lives twenty or thirty miles after receiving the notice than if he lived in the vicinity or away from the vicinity, but in either event he has the right to notification that his goods have been received and he has a right to a sufficient time to receive the notice, else so far as the duty to notify is concerned those who live away from the depot are absolutely without the protection of the law that requires the company to notify.

In the very case quoted the court left it to the jury to decide on the issue of facts as to whether Phillips had gotten the notice. The agent said that he had sent him the notice, that I take it is not denied, but Phillips denied that he had received the notice and that was the issue of fact which the court, after reversing the case for some erroneous instructions that were given, remanded the case.

And we submit that the holding of the lower court should not be disturbed and this case should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This was an action at law by the appellee to recover. from the appellant the value of certain property shipped to the appellee from Memphis to Duck Hill, Miss., over the appellant's railroad, and which was destroyed by fire while in the appellant's depot at that place. The cause was submitted to the judge of the court below, and tried by him without a jury on the following agreed statement of facts:

"We agree that the facts in this cause are as follows: That the goods, amounting to the value of one hundred and forty-two dollars, were shipped from Memphis, Tenn., on March 8, 1921, over defendant's railroad, and consigned to plaintiff, and that said shipment arrived at Duck Hill, Miss., a station on defendant's railroad, and the point of destination, and reached said Duck Hill about noon on Thursday, March 10, 1921; that said goods were speedily unloaded and placed in defendant's depot; that defendant's agent, at request of plaintiff, at about four or five o'clock in the evening of the same day that said consignment arrived, mailed notice of its arrival to plaintiff's post office address at Embry, Miss., about twenty miles distant from Duck Hill in the country. See Exhibit No. 1 hereto, and made part hereof.

"That in due course of mail the said card would have arrived at Embry, Miss., on Friday, March 11, 1921, at 2 p. m.; that plaintiff's post office address is 'Embry, Miss., Route 1;' that said card after its arrival at Embry, Miss., was sent out to plaintiff's house on said route (his post office box) on Saturday March March 12, 1921, in the afternoon between four and five o'clock; that plaintiff's mode of hauling was in two-horse wagon; that on Monday morning after said card was received plaintiff sent wagon to Duck Hill for his said freight, and on his arrival there found out for the first time that the depot and goods had been destroyed by fire the night before, Sunday night at eight p. m. Claim was filed by plaintiff on 20th of April,

1921, with defendant's agent at Duck Hill for said goods, and payment refused at point of destination."

Judgment was rendered for the appellee. The bill of lading on which the property was shipped contains the following stipulation:

"For loss, damage or delay, caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of arrival of the property at destination or at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only."

As we understand the brief of counsel for the appellant, their sole contention is that the forty-eight hours during which the appellant continued liable as a common carrier for loss or damage to the property began on the mailing of the notice to the appellee. The ground of this contention is: First, that the bill of lading expressly so stipulates; and, second, that by requesting that the notice be mailed to him the appellee made the postal department his agent for the receipt of the notice.

A notice is sent ordinarily when it is dispatched by an agent or messenger, but it is hardly possible that the notice here provided for was intended to become effective before being received by, in the absence of some default on the part of, the consignee, for the only purpose it could serve would be to inform the consignee of the arrival of his property at its destination so that he could accept and remove it; and, construing the language most strongly against the appellant, as we must do since it is contained in its bill of lading, and so as to effectuate the evident intention of the parties, we must assume that the receipt, and not the mere sending of the notice, was contemplated. *St. Louis, B. & M. R. R. Co.* v. *Hicks* (Tex. Civ. App.) 158 S. W. 192.

By requesting that the notice be mailed to him the appellee did not make the postal department his agent for the receipt of the notice. At most he simply agreed that the post office might be the agency for the transmission to him of the notice.

*Affirmed.*