43 So.2d 148

**SUN OIL CO. v. SMITH et al.**

No. 39132.

June 30, 1949.

Rehearing Denied Nov. 7, 1949.

28

Smitherman, Smitherman & Purcell, Shreveport, Cotton & Bolton, Rayville, Fink & Fink, Monroe, Warren Hunt, John C. Morris, Jr., Rayville, for defendants-appellants.

HAWTHORNE, Justice.

This is a concursus proceeding instituted by the Sun Oil Company under the provisions of Act No. 123 of 1922. Pursuant to an order of court, the oil company deposited in the registry of the district court the proceeds from the purchase price of a one-eighth royalty of the oil produced from wells located on the NW¼ of the NE¼, the N½ of the NW¼, and the SW¼ of the NW¼, Section 5, Township 16 North, Range 8 East, and cited numerous claimants to appear and assert their respective interests and rights thereto, as well as to all future deposits made pursuant to such order. The claimants are: S. M. Smith, Charles Smith, R. N. Smith; the children of Mrs. Cora Smith Covington, these being Herman Covington, Mrs. Katie Covington Warren, Mrs. Lavada Covington Ryan, Morgan J. Covington, Marcus Covington, Hazel Covington, Annie J. Covington, William Washington Covington, Ray Covington, and Mary Frances Covington; Mrs.

Blanche Smith Biddy, Raleigh A. Hunter, Jr., and Mrs. Annie E. Hunter Medlin—all as fee owners—, and J. E. Day, J. A. Woods, Mrs. Minnie Lee Woods, J. B. Woods, J. F. Woods, A. A. Geyer, T. C. Eades, H. A. Hamilton, and W. D. Byrd—who claim to own various mineral or royalty rights conveyed by certain of the fee owners named above.

The case was tried and submitted to the lower court for decision on a stipulation of counsel for all claimants and on documentary evidence, consisting of various deeds and other instruments, which disclose the following facts:

Prior to the year 1900, S. M. Smith was married to, and living in community with, his wife, Mrs. Annie Freeman Smith. On November 19, 1901, David Burk conveyed to S. M. Smith all of the property hereinabove described, from which oil is now being produced, together with the S½ of the NE¼ of Section 5, Township 16 North, Range 8 East, for the price of $1000.00, of which amount $200.00 was paid in cash, and for the balance or credit portion four promissory notes were executed, each in the sum of $200.00, payable on December 1 of the year 1902 and on the same date for the following three years. Thereafter, on September 4, 1902, S. M. Smith reconveyed to David Burk the identical property previously acquired. This instrument is designated by the parties thereto as an act of retrocession, and the consideration was the sum of $200.00 in cash and the surrender and cancellation of the four vendor's lien notes of Smith, described in the deed of his acquisition. In this instrument the words of conveyance read as follows:

"[S. M. Smith] * * * does by these presents Grant, Bargain, Sell, Convey, Deliver and Retrocede with Full Warranty of Title and with complete transfer and subrogations of all rights and actions of warranty against all former proprietors of the property hereby conveyed unto David Burk, * * * who is present and accepting this sale and retrocession for himself * * *."

On September 16, 1904, Mrs. Amanda J. McKelvey conveyed to Smith by warranty deed the SW¼ of the NW¼ of Section 5, which had been previously conveyed by David Burk to Smith and by Smith back to Burk in the act of retrocession hereinabove mentioned. Thereafter, on October 12, 1904, Sim Burk, who had acquired a one-half interest from David Burk, and David Burk conveyed to S. M. Smith and R. A. Hunter, Sr., the identical property described in the act of retrocession, which included the SW¼ of the NW¼ of Section 5. However, with reference to this tract, the act of sale recited that the vendors conveyed only such interest or claim as they might have had without any warranty whatsoever, and that the purchasers accepted the property at their own risk and peril but were subrogated to any rights or actions of warranty against all former proprietors. This is the same 40-acre tract

which had been previously acquired by S. M. Smith from Mrs. Amanda J. McKelvey.

Mrs. Annie Freeman Smith, wife of S. M. Smith, died on October 6, 1906, survived by her husband and nine minor children: Charles Smith, R. N. Smith, Mrs. Cora Smith Covington, Mrs. Blanche Smith Biddy, Mrs. Janie Smith Hunter, Bruce Smith, J. A. Smith, R. A. Smith, and Martin Smith. Of these heirs, Bruce, J. A., R. A., and Martin Smith died without issue, leaving their father, S. M. Smith, and their brothers and sisters as their sole and only heirs. Mrs. Cora Smith Covington died in 1931, leaving as her sole and only heirs 10 children, all named as claimants hereinabove. Mrs. Janie Smith Hunter and her husband, R. A. Hunter, Sr., died in 1909. Her sole heirs were her three minor children, Mrs. Annie E. Hunter Medlin, then aged four years; Raleigh Hunter, Jr., aged four months, and another child who subsequently died.

On July 6, 1908, after the death of Mrs. Annie Freeman Smith, S. M. Smith and his son-in-law, R. A. Hunter, Sr., entered into a deed of exchange, in which Hunter conveyed to Smith with full warranty the N½ of the NW¼ and the NW¼ of the NE¼ of Section 5, and Smith conveyed to Hunter, also with full warranty, the S½ of the NE¼ of this section. This is the identical property described in the deed to Smith and Hunter, Sr., from David and Sim Burk on October 12, 1904, except for the SW¼ of the NW¼ of this section, which was omitted from this deed of exchange. For the purpose of clarity, we shall hereafter refer to the N½ of the NW¼ and the NW¼ of the NE¼, the land described as being conveyed to Smith in the deed of exchange, as "Tract A", and to the SW¼ of the NW¼ of Section 5, which was not described or mentioned in the deed of exchange, as "Tract B".

The parties have stipulated that, as of October 12, 1904, a good, valid and merchantable title as to Tract A was vested in S. M. Smith, who was married to, and living in community with, his wife, Mrs. Annie Freeman Smith, and in R. A. Hunter, Sr., who was married to, and living in community with, his wife, Mrs. Janie Smith Hunter, in the proportion of an undivided one-half interest to each. All claimants have further stipulated and agreed that Mrs. Annie Freeman Smith's one-half interest in whatever property belonged to the community of acquets and gains existing between her and S. M. Smith was inherited by her nine minor children; that, after the death of Mrs. Smith, the interest of each of the deceased children who died intestate and without issue was inherited in the proportion of an undivided one-fourth by their father, S. M. Smith, and an undivided three-fourths by the surviving Smith children or the children of deceased children, and that as a result of these facts the community previously owned by S. M. Smith and his wife, Mrs. Annie Freeman Smith,

now belongs to the following named persons in the following proportions:

S. M. Smith ...............2,915,010/5,160,960;
Charles Smith
R. N. Smith
Blanche Smith Biddy.......449,190/5,160,960 each;
Raleigh Hunter, Jr.
Annie E. Hunter Medlin....449,190/10,321,920 each;
Ten children of Cora
Smith Covington ............ 44,919/5,160,960 each.

As to Tract A, the district court found that the partition or deed of exchange between S. M. Smith and R. A. Hunter, Sr., was invalid, and that consequently, subject to all valid sales, conveyances, etc., an undivided one-half interest in the minerals and royalties from this tract belonged to Raleigh Hunter, Jr., and Mrs. Medlin by virtue of their inheritance of the community estate of their father and mother, and an undivided one-half interest belonged to S. M. Smith and the heirs of Mrs. Annie Freeman Smith.

As to Tract B, the district court found that R. A. Hunter, Sr., never acquired any interest therein, and that it belonged in its entirety to the community of acquets and gains existing between S. M. Smith and his wife, Mrs. Annie Freeman Smith, and that, subject to all valid sales, conveyances, etc., the minerals and royalties from it belonged to S. M. Smith and the children or descendants of Mrs. Annie Freeman Smith. From this judgment all claimants appealed.

### Tract A.

(N½ of NW¼ and NW¼ of NE¼, Section 5, Township 16 North, Range 8 East)

As to Tract A, it is the contention of Raleigh Hunter, Jr., and Mrs. Annie E. Hunter Medlin that the deed of exchange, in which their father exchanged Tract A with Smith for the S½ of the NE¼, is an absolute nullity, since the minor heirs of Mrs. Annie Freeman Smith were not made parties thereto, and since no court order was obtained authorizing the sale or partition of the minors' interest in the property.

Immediately after the deed of exchange between Smith and Hunter, Sr., of date July 6, 1908, Smith and Hunter, Sr., went into possession of their respective tracts conveyed by the deed. (The tract acquired by Smith is that which we have designated as Tract A; the 80-acre tract acquired by Hunter, Sr., is not a part of the property from which the royalty oil involved in this suit was produced.) Smith fenced and cleared his tract, and resided there with his family. He assumed control, ownership, and possession of the tract acquired by him in the deed of exchange, has never sold any portion thereof, and has remained in continuous, physical possession ever since. Hunter, Sr., conveyed to William D. Hunter on November 27, 1908, one 40-acre tract which he acquired in the deed of exchange, and, several years after his death and that of his wife, his son, Raleigh Hunter, Jr., together with S. M. Smith, executed a deed conveying all of "their entire interest" in the other 40-acre tract to Arthur Medlin, husband of his sister, Mrs. Annie Hunter Medlin, who had also inherited an interest therein from her father and mother.

█ It is well settled under the jurisprudence of this state that a partition is invalid if all of the co-owners of the property partitioned are not made parties thereto, whether the partition is by conventional agreement or by judicial process, and that such a purported partition is considered as no partition at all, binds none of the parties to it, and is null as to all. Guidry v. Guidry's Heirs, 16 La. 157; Kendrick's Heirs v. Kendrick, 19 La. 36; Rightor et al. v. De Lizardi et al., 4 La.Ann. 260; Wright & Williams v. Cane et al., 18 La.Ann. 579; Boutte et al. v. Executors of Boutte et al., 30 La.Ann. 177; Smith et al. v. Smith et al., 131 La. 970, 60 So. 634; Wheeler et al. v. Mann et al., 149 La. 866, 90 So. 225; Latham et al. v. Glasscock, 160 La. 1089, 108 So. 100; Erskine et al. v. Gardiner, 162 La. 83, 110 So. 97; Amerada Petroleum Corporation v. Reese et al., 195 La. 359, 196 So. 558.

The case of Wheeler et al. v. Mann et al., supra, involved a conventional or voluntary partition and one in which one of the co-owners or her heirs were not made parties to the agreement, and with reference to this matter this court said [149 La. 866, 90 So. 229]:

"* * * there could have been no partition, whether definitive or provisional, of property of which they were part owners without giving them an opportunity to be heard.

"It is clear, then, that there is no question here presented of the right to rescind a partition, or of the prescription of an action having that purpose in view, since there has been no partition * * *."

Wright & Williams v. Cane et al., supra, also involved a voluntary partition from which one of the co-owners was omitted, and on this point we stated: "We consider the partition by the five heirs a mere nullity, vesting title in no one. * * ·* "

In Smith et al. v. Smith et al., supra, this court said [131 La. 970, 60 So. 634]:

"In a partition suit between coheirs, all of the heirs must be cited and represented. And if they are not all before the court, the proceedings are null not only for the heir not represented but for all the heirs. A partition cannot subsist for one and be annulled for another. All the heirs are relieved from the partition when one is relieved. * * *"

In Latham et al. v. Glasscock, supra, it was stated [160 La. 1089, 108 So. 100]:

"A judgment rendered in a partition suit against a person not cited is a nullity as to him, and a sale made under such judgment is void as to the person not cited, and all other parties to the proceedings are relieved 'for the partition cannot subsist for one, and be annulled for another.' "

█ The partition or exchange between Smith and Hunter, Sr., therefore, was no partition at all, was invalid, bound none of the parties, and was null as to all.

The heirs of Mrs. Annie Freeman Smith (except Raleigh Hunter, Jr., and Mrs.

Annie E. Hunter Medlin, who inherited from their mother, Mrs. Janie Smith Hunter, her share of the property of their grandmother, Mrs. Annie Freeman Smith) and the purchasers of various royalty or mineral interests make no contention that the partition was valid, but take the position (1) that it has been ratified and confirmed by all the heirs; (2) that, since Mrs. Medlin and Hunter, Jr., have accepted their father's succession unconditionally, they are bound by his warranty in the partition deed and cannot rescind the partition, and (3) that, since Hunter, Jr., and Mrs. Medlin have sold a portion of the property which their father received by the partition and are not in a position to restore the other heirs of Mrs. Annie Freeman Smith to their possession, they cannot attack the partition.

In considering the question of ratification, we must remember that Hunter, Jr., and Mrs. Medlin are attacking the partition as heirs of their grandmother, Mrs. Annie Freeman Smith, and, further, that in the deed of exchange itself their mother, from whom they inherit, received no interest in the property or any portion of it, was omitted entirely, and was not even mentioned.

In May of 1909, less than a year after this partition, R. A. Hunter, Sr., and his wife, Mrs. Janie Smith Hunter, died. At that time Mrs. Medlin and Hunter, Jr., were both minors, Mrs. Medlin being four years and Hunter, Jr., four months old.

The claimants seeking to show ratification of the invalid partition contend that it has been ratified by the long silence and acquiescense of the Smith heirs after reaching their respective majorities. If we concede for the sake of argument that the partition was such a nullity as could be ratified in this manner, there might be merit in this contention if the heirs of Mrs. Annie Freeman Smith had received in the partition a portion of the property, either separately or jointly, as heirs of their mother. They received nothing, however, and the record does not disclose that they had any knowledge of the partition itself or of any facts connected with it. We cannot perceive how any individual would ratify an invalid act when such invalid act had the effect of depriving him of his share in an estate to which he was legally entitled. Certainly long silence alone could not be construed as a ratification when the individual remaining silent had no knowledge of the illegal act by which he was deprived of his share in the estate.

S. M. Smith and all the heirs of Mrs. Annie Freeman Smith, except Hunter, Jr., and Mrs. Medlin, state that they are making no effort to deprive the Hunter children of their interest in their grandmother's estate, and that this interest is not an issue in this case. Their position in this respect is, to say the least, admirable, but their indulgence or generosity cannot change the invalid partition into a legal one. Further-

more, they overlook the fact that, if the partition is illegal, the interest which the Hunter children receive in this tract will be materially increased. If long silence and inaction alone in the instant case are sufficient to ratify the deed of exchange, S. M. Smith could well contend that none of the heirs of his deceased wife has any interest whatsoever in this tract, as none of them was a party to the deed of exchange and, so far as the record discloses, took any action after reaching majority.

■ What was said in Snelling v. Adair et al., 196 La. 624, 199 So. 782, 786, is pertinent here:

"The pleas of estoppel, ratification, and acquiescence, which are based on the long silence and inaction of the plaintiff and her ancestor, are equally unimpressive, for one can never be divested of his title to property except in the manner prescribed by law. Pearce v. Ford, 124 La. 851, 50 So. 771; Long v. Chailan, 187 La. 507, 175 So. 42; and Gibson v. Pickens, 187 La. 860, 175 So. 600."

■ To hold that the Hunter children had, by virtue of their long silence and acquiescence, ratified this partition, in which their mother was not represented and not allotted a share of the property, would, in legal effect, be holding that S. M. Smith acquired this interest, and these heirs have been divested thereof, by estoppel, which we cannot do under the jurisprudence of this state. Snelling v. Adair et al., supra; Pan-American Production Co. v. Robichaux et al., 200 La. 666, 8 So.2d 635.

These claimants further contend that Mrs. Medlin and Hunter, Jr., have ratified and confirmed the partition by certain acts, these being the taking of possession of the property received by their father in the exchange deed, and a sale executed to Arthur Medlin by Raleigh Hunter, Jr., of one of the 40-acre tracts received by their father.

With reference to possession, claimants overlook the fact that in the deed of exchange no property whatsoever was set apart to Mrs. Janie Smith Hunter, mother of the Hunter children, and consequently as a result of the partition the Hunter children received no property as her heirs which they could possess as such. Further, that they actually possessed, cultivated, and farmed the property allotted to their father is merely an allegation in the answer of the claimants opposing them, and this possession or its nature is not shown or proved by the record.

■ As to the sale by Hunter, Jr., S. M. Smith, the father of the Smith heirs, who is now contending that the partition has been ratified, joined with Hunter, Jr., who was a minor at the time, in this deed, which recited that the parties were conveying their entire interest. Since Hunter, Jr., did not purport to convey the property as sole owner and since he was a minor, the act of execution could not be construed as a ratification by him.

■ Even if we concede that Hunter, Jr., ratified the partition by executing this deed, there is no evidence that Mrs. Medlin has ratified the partition by any act. As this court has previously stated, ratification in order to be clear and effective must be performed by all parties. See Milburn et al. v. Wemple (On Application for Rehearing), 156 La. 759, 101 So. 132.

In support of the plea of ratification, counsel cite Huset's Heirs v. Lefebvre et al., 6 La. 601; Wilson v. Craighead, 6 Rob. 429; Jamison v. Smith, 35 La.Ann. 609, and Whitney Nat. Bank of New Orleans v. Schwob, 203 La. 175, 13 So.2d 782. These cases do not support the contention. They are authority for the proposition that certain irregularities in regard to the property of minors may be cured by silence and inaction after majority, but not one of them involves an instance in which the court held that ratification of a partition to which one of the co-owners was not a party would be inferred by the long silence and inaction of that co-owner.

Further in support of the plea, counsel cite the case of Johnston v. Labat, 26 La. Ann. 159, for the proposition that, even in the absence of a written act of partition, where co-heirs divide land among themselves and remain in undisturbed possession of their respective tracts for over 30 years, the partition will be valid. This case is not applicable to the facts in the instant case, as certain of the co-owners here, not being parties to the act of partition, have not divided the land among themselves.

■ There is likewise no merit in the contention that, since Mrs. Medlin and Hunter, Jr., have accepted their father's succession unconditionally, they are bound by his warranty in the partition deed. As we have previously pointed out, the purported partition was no partition at all, bound none of the parties to it, and was null as to all. The partition deed itself, being a nullity, falls in its entirety, including the warranty provision contained therein. The cases of Huset's Heirs v. Lefebvre et al., 6 La. 601, and Foster et al. v. Spann et al., 170 La. 1019, 129 So. 622, are therefore not authority for this contention.

■ The basis of the contention that, since Hunter, Jr., and Mrs. Medlin are not in a position to restore to Smith and the other heirs of Mrs. Annie Freeman Smith the 80 acres received by their father in the partition, they cannot attack the partition is the equitable principle recognized in Tippett v. Jett, 3 Rob. 313. The court said in that case:

" * * * it is a general rule in all actions of rescission, that the party seeking relief must offer to restore his adversary to the situation he was in before the contract. He who seeks equity, must do equity. * * *"

And of this principle it is said in 19 Am. Jur., Equity, secs. 463, 464, pp. 319, 320, 321:

"One of the most frequently invoked maxims of equity declares that he who seeks equity must do equity. The principle

thus expressed governs the courts in administering any kind of equitable relief in any controversy where its application may be necessary to work out complete justice. Having come into the chancery court seeking equitable relief, a complainant must offer to do equity and will be required by the court to do equity as a condition to the granting of the desired remedy. * * *

"Pursuant to the principle in question, a complainant who seeks to have an instrument, obligation, or transaction canceled or set aside must return or offer to return whatever he may have received from the defendant. * * *"

■■■ Counsel have urged this contention strenuously here and in the lower court, and for this reason we have given it our most careful consideration, but have found it to be without merit. In the first place, the contention presupposes that this is an action of rescission properly speaking, and that the Hunter heirs are seeking to have their full rights in the property allotted to Smith in the partition restored to them, without offering to the other heirs of Mrs. Annie Freeman Smith and to S. M. Smith their interest in the 80 acres that were allotted to Hunter, Sr. The cases of Tippett v. Jett, supra; Martin et al. v. Martin et al., 15 La.Ann. 585, and Bowen et al. v. Marston, 134 La. 298, 64 So. 118, relied upon to support the contention, involved actions to annul or rescind partitions. This proceeding, properly speaking, is not such an action. The dis-

trict court was called upon to order the proper disposition of the fund deposited in the registry of the court. No judgment was prayed for cancelling, annulling, or setting aside the partition, or restoring any of the parties to the possession of any of the property involved herein. Furthermore, if the Hunter heirs had tendered the 80 acres allotted to their father in the purported partition, the court could have awarded no relief to Smith or the heirs of Mrs. Annie Freeman Smith as to that tract because that property is not involved in this case and no relief is sought as to it. The principle, therefore, does not apply in this proceeding.

If the contention had been made that royalty oil had been produced from the 80 acres allotted to Hunter, and the Hunter heirs had not tendered part of it to Smith and the other Smith heirs in accordance with their contention of nullity of the partition, but nevertheless were demanding their father's share of that produced from the land allotted to Smith, our problem would be more serious. No such contention has been made here, however.

■■■ Furthermore, as pointed out by the trial judge, this record does not disclose that it will be impossible for the Hunter heirs to restore to the other co-owners the property allotted to their father. But, if we concede that it were impossible, our own Code indicates that it is not necessary to make restitution in kind in every case in which a partition is rescinded. Article 1410, Civil Code, reads:

"The coheir who has alienated his share or part of it, is no longer admitted to bring the action of rescission for fraud or violence, if the alienation he has made was posterior to the discovery of the fraud, or to the cessation of the violence."

The inference is that restitution may be made by other means than in kind by the one seeking rescission, if the alienation occurred anterior to the discovery of fraud, etc. In any event, as to the matter of restitution, it would seem that the court could permit in any case what the justice of the case requires.

For these reasons, we are of the opinion that the trial judge correctly found that the partition or deed of exchange executed by S. M. Smith and R. A. Hunter, Sr., was invalid, and that as a result of such invalidity an undivided one-half interest in this tract belonged to the community of acquets and gains existing between Mrs. Janie Smith Hunter and R. A. Hunter, Sr., and was inherited by their children, Hunter, Jr., and Mrs. Medlin, and that an undivided one-half interest belonged to S. M. Smith and the heirs of Mrs. Annie Freeman Smith.

### Tract B.

(SW¼ of NW¼, Section 5, Township 16 North, Range 8 East)

As to tract B, it is the contention of Hunter, Jr., and Mrs. Medlin, as well as of claimants who acquired various mineral or royalty interests in it through them—J. E. Day, J. A. Woods, Mrs. Minnie Lee Woods, J. B. Woods, J. F. Woods, A. A. Geyer, T. C. Eades, H. A. Hamilton, and W. D. Byrd—, that R. A. Hunter, Sr., was a joint owner of this tract with S. M. Smith, that it has never been partitioned, and that consequently Hunter, Jr., and Mrs. Medlin now own an undivided one-half interest in this tract. The other heirs of Mrs. Annie Freeman Smith contend that no title to this particular 40-acre tract was ever vested in Hunter, Sr.; that he was not a co-owner of this tract with Smith, and that his heirs have no interest in this property other than the interest inherited from their mother, Mrs. Janie Smith Hunter.

As we have previously stated, Tract B was included both in the warranty deed from Burk to Smith and in the act of retrocession, from which we have already quoted the conveyance clause, from Smith to Burk on September 4, 1902. On September 16, 1904, after the execution of those two instruments, Mrs. Amanda J. McKelvey conveyed to S. M. Smith the tract in question. Under these facts Hunter, Jr., et al. contend that whatever title Smith acquired from Mrs. McKelvey inured to the benefit of David Burk by virtue of the retrocession deed, which stated that it was made with full warranty of title, and likewise inured to Smith and Hunter as purchasers from David and Sim Burk on October 12, 1904; or, in other words, they rely on the doctrine of "after-acquired

title", that, where one sells property of another and later acquires title to the property sold by him, the title vests immediately in his vendee, and they contend that under this doctrine Smith and Hunter, Sr., became joint owners of Tract B.

· David Burk acquired this tract, with other property, in 1901 from Shadrack Croxton, whose authors in title trace their title back to Mrs. Martha A. Croxton. However, in a sale from Mrs. Amanda J. McKelvey to Mrs. Martha A. Croxton, their author in title, in 1895, this tract was not included in the description contained in the deed. After S. M. Smith had retroceded the property to David Burk in 1902, he acquired the tract by warranty deed from Mrs. McKelvey, who had never parted with title to it.

 The act of retrocession had the effect, as between the parties thereto, of restoring the possession and ownership in David Burk as if the sale to Smith had not taken place, Burk returning to Smith the cash consideration paid and the notes given by Smith evidencing the credit portion of the sale. By this act of retrocession David Burk acquired no new title in the property, but only had restored to him whatever title he had before the sale; by it Smith conveyed to Burk only such title to this tract as he had received from Burk. Fulton v. Fulton, 7 Rob. 73; Chretien et al. v. Richardson et al., 6 La.Ann. 2. Smith's subsequent acquisition from Mrs. McKelvey under these circumstances did

not inure to the benefit of David Burk, and the doctrine of after-acquired title has no application. .

 Further in support of their contention that Hunter, Sr., was a joint owner of this tract with Smith, Hunter, Jr., et al. rely on the principle of law that a purchaser will not be permitted to dispute his vendor's title or to show it to be inferior to that of another or to contend that there are. outstanding titles. This principle of law has no application in the instant case, as the Smith heirs are not claiming under the deed to Smith and Hunter, Sr., from David and Sim Burk, whose title was derived from Mrs. Martha A. Croxton, but are claiming under Smith's prior acquisition from Mrs. Amanda J. McKelvey. They have repudiated the title conveyed by the Burks to Smith and Hunter, Sr., as a nullity resulting from a sale of property by one who did not own it, and are not tracing their title to a common author.

In support of their contention, Hunter, Jr., et al. cite Lesassier v. Dashiell, 14 La. 467; Barrow v. Wright, 9 Rob. 522, and Consolidated-Progressive Oil Corporation et al. v. Standard Oil Co. of Louisiana, 158 La. 982, 105 So. 36, 38: The first two cases are authority only for the proposition that lack of title in the vendor cannot be urged as a ground for rescission of a sale and is not a defense to a suit for the purchase price if the vendee has not been evicted. The last case cited recognizes the above principle of law when the source of title

claimed is a common one with that of the party against whom title is asserted. However, in the course of the opinion in that case, in remanding the case for trial on the merits (appellant's suit having been dismissed on an exception of no cause of action), the court said:

"Nor do we hold in this case that the Standard is deprived of any legal right or valid defense that said company may have upon the trial of the merits, after answer filed, such as *showing a title in defendant company,* or *the acquisition of title from some other source,* or relying upon the inability of plaintiffs to show a legal and valid title." (Italics ours.)

In Wilson et al. v. Pierson, 143 La. 287, 78 So. 561, 562, Henderson purchased property from Pierson, who reserved to himself the minerals. Pierson had no title. Upon learning this, Henderson bought the property from the owner in possession and thereafter sold the minerals to J. C. Wilson. Wilson and Henderson then brought an action in jactitation against Pierson, and in defense thereto Pierson contended that the plaintiffs were estopped from disputing his title. To this contention this court said:

"The plea is founded upon the doctrine that a claimant cannot dispute the title by which he claims. But that elementary principle is not applicable to this case, because the plaintiffs are not claiming under or by virtue of the title, or supposed title, acquired by the defendant and conveyed by him to Henderson. They have repudiated that title as a nullity resulting from the sale of property by one who did not own it. * * *"

 Hunter, Jr., et al. contend also that, since Smith was a co-purchaser with Hunter, Sr., from David and Sim Burk, he cannot contest the title of his co-purchaser. There would be merit to this contention if Smith had acquired his title to this tract from Mrs. McKelvey after the joint purchase by him and Hunter, Sr., from the Burks, because by virtue of the fiduciary relationship between co-purchasers any interest acquired by one co-purchaser during the relationship inures to the benefit of the others. However, Smith acquired title to the tract from Mrs. McKelvey before the execution of the deed, made without warranty, to him and Hunter, Sr., from the Burks.

The case of Armorer, Administrator, v. Case et al., 9 La.Ann. 242, relied on by Hunter, Jr., et al., would apply to this case only if Smith had purchased from Hunter, Sr., the interest he and Hunter acquired by their purchase from the Burks, and if he, Smith, were resisting the payment of the purchase price on the ground that, at the time he purchased Hunter, Sr.'s interest, he owned the property by virtue of his purchase from Mrs. McKelvey.

 The further contention is made that S. M. Smith is estopped from claiming that he and the heirs of his deceased wife own more than an undivided one-half interest in this tract, by virtue of certain

declarations and allegations made in Smith's application to be appointed tutor of three minor children of his deceased daughter, Mrs. Cora Smith Covington. In those proceedings he made allegations setting forth the acquisition of all of the property described in the Burk deed to him and Hunter, Sr., and the partition thereof by deed of exchange, and alleged that the act of partition did not include this tract. This plea of estoppel is based on the fact that the minors' interest as set forth by him in his application, as well as in the inventory made in the tutorship proceedings, was computed on the basis of an undivided one-half ownership of Smith and the Smith heirs in this tract.

There is no merit in this plea of estoppel, as it is now the well settled jurisprudence of this state that only admissions or allegations made in the same judicial proceedings effect a judicial estoppel; that admissions made in a judicial proceeding other than the one in which the plea of estoppel is urged operate as an estoppel against the one making the admissions only when the one urging the plea has relied upon them and has been deceived, misled, or damaged by such reliance, and that such admissions are evidence but do not of themselves create an estoppel. Farley et al. v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L.R.A.1915A, 200, Ann.Cas.1915C, 717; Tyler v. Walt et al., 184 La. 659, 167 So. 182; Sanderson et al. v. Frost, 198 La. 295, 3 So.2d 626; Robinson v. Hunt et al., 211 La. 1019, 31 So.2d 197; Succession of Land, 212 La. 103, 31 So.2d 609; Janney v. Calmes et al., 212 La. 756, 33 So.2d 510.

H. A. Hamilton, J. E. Day, et al., the purchasers of mineral or royalty interests from Mrs. Medlin and Hunter, Jr., state that they purchased these interests after the title to this tract had been examined by attorneys, who advised them to make their respective purchases because the title was good. They contend that this fact is sufficient cause for the plea of estoppel to be sustained as to them. Although the attorneys who checked the records testified that they took into consideration the tutorship proceedings in advising these purchasers, the purchasers have not shown that their purchases of these mineral or royalty interests were caused by their reliance on Smith's declaration in the tutorship proceedings. Since they have failed to establish that they relied, to their injury or prejudice, on the declaration of Smith as establishing title in the Hunter heirs to a one-half interest in the fee, the plea cannot be sustained as to them.

In support of this plea we have been cited to the cases of W. K. Henderson Iron Works & Supply Co., Ltd., et al. v. Highhouse et al., 141 La. 803, 75 So. 729; Mohawk Oil Co. et al. v. Layne et al., 147 La. 895, 86 So. 322, and Prichard et al. v. McCranie et al., 160 La. 605, 107 So. 461. Those cases, insofar as they are in conflict with the concept of judicial estoppel as enunciated in the Farley, Tyler, and other cases cited hereinabove, are overruled.

It is significant to us that in the act of sale from David and Sim Burk to Smith and Hunter, Sr., the vendors therein conveyed only such title as they might have had to this tract without any warranty whatsoever; that, according to the stipulation of counsel, S. M. Smith and his family have farmed this tract since his acquisition from Mrs. Amanda J. McKelvey on October 12, 1904, to the present time; that, after Smith's acquisition from Mrs. McKelvey, when he and Hunter, Sr., entered into their act of exchange, this tract was not even mentioned or described. All this indicates that the parties themselves did not consider that they were co-owners of the tract.

For these reasons, we are of the opinion that the finding of the district court that R. A. Hunter, Sr., never acquired any interest in this tract, and that it belonged to the community of acquets and gains existing between S. M. Smith and the deceased Mrs. Annie Freeman Smith is correct.

The judgment appealed from fixes the respective interests of Smith and of the Hunter and the Smith heirs, subject to all valid conveyances, alienations, etc., in the mineral and royalties under both tracts and in the fund deposited in the registry of the court, but does not determine or fix the rights and interests, if any, of the various purchasers of royalty or mineral interests from these owners, or determine the proportionate share of each claimant in the fund deposited and being deposited in the registry of the court by Sun Oil Company.

It is therefore necessary for us to remand the case to the lower court so that this may be done.

For the reasons assigned, the judgment appealed from is affirmed, and the case is remanded to the district court to be proceeded with according to the instructions given herein. All costs are to be paid from the fund deposited in the registry of the district court.

O'NIELL, C. J., takes no part.