LANDRY, Judge ad hoc.
Plaintiff, Prieto Lumber Company, a commercial partnership, has taken this appeal from the judgment of the lower court rejecting its demand against defendants, Mr. and Mrs. Maurice Shoultz, for the sum of $440.19 allegedly due on open account for certain building materials purportedly sold *859 to and used by defendants in the construction of a residence.
Defendants resist the demand on the ground that the materials in question were not sold to them but to one William Holmes, a contractor employed by defendants to construct the dwelling on which the materials were used.
The evidence shows that during the early months of 1956, defendants entered into a written but undated contract with William Holmes pursuant to which Holmes obligated to construct a six room residence for defendants for the sum of $3,745.53.
Material used in the construction of the dwelling was supplied by plaintiff. The last date on which material was delivered on the job was June 2, 1956, as evidenced by a delivery ticket dated that day addressed to “Wm. Holmes, '% Mrs. Maurice Shoultz”; said delivery ticket was signed by Mrs. Shoultz.
Holmes did not pay for the materials delivered June 2, 1956, and to protect its interests, plaintiff, on August 1, 1956 (within the delay period provided for by law), filed a lien against the dwelling that Holmes constructed for defendants.
Subsequent to plaintiff’s filing the lien against defendants’ property, defendants instituted suit against Holmes, seeking judgment against Holmes for the sum of $686.71 (being the amount owed by Holmes to plaintiff and Poole Lumber Company for material used in construction of the Shoultz residence). Defendants’ suit against Holmes was filed February 1, 1957 (while plaintiff’s lien was still valid and outstanding against defendants’ property). The basis of defendants’ claim against Holmes is stated in the supplemental and amended petition filed in said matter in which the following allegations are made.
“2.
“That defendant is justly, truly, and legally indebted unto petitioners in the just, true and legal sum of Six Hundred eighty-six dollars and seventy-one cents ($686.71), which amount being what petitioners had to pay to Poole Lumber Company of Covington, Louisiana, and what is owed to Prieto Lumber Company of Mandeville, Louisiana, for materials purchased and received by defendant from them as per itemized statement hereto attached.
“4.
“That in accordance with the agreement, the plaintiff fulfilled their part thereof, but the defendant defaulted on his part and did not complete the job.
“5.
“That it was necessary for plaintiffs to pay the amount of Six hundred eighty-six dollars and seventy-one cents ($686.71) to Poole Lumber Company and Prieto Lumber Company and for this amount, the defendant is indebted to plaintiff.
“6.
“That plaintiffs made a number of demands upon defendant for this above amount without results.
“7.
“That plaintiffs filed a petition previous to the filing of this amended petition, whereas plaintiffs alleged the amount owed them as Six hundred eighty-six dollars and seventy-one cents (686.71) and stated in that petition that said amount was owed on an open account, and plaintiffs file this amended petition to show that this amount is owed as the results of a contract signed between defendant and petitioner, Mrs. Maurice Schultz.”
Defendants were successful in their suit against Holmes (the entire record of which was introduced in evidence in the case at bar) and on July 19, 1957, judgment was rendered therein in favor of present de *860 fendants and against said Holmes in the sum of $686.71.
Although plaintiff timely filed its lien against defendants’ property, plaintiff did not obtain judgment on same within a year of its filing date. Therefore, said lien prescribed August 1, 1957. Having lost the advantage of its lien, plaintiff instituted this action against defendants on October 24, 1957, contending the amount in suit is due on open account.
Plaintiff contends the materials were in fact purchased by defendants and not Holmes, the contractor. Unfortunately for plaintiff, this contention is not substantiated by the evidence of record.
Counsel for plaintiff strenuously argues that since Mrs. Shoultz signed the receipt for the materials delivered June 2, 1956, she accepted responsibility for the materials included thereon. This conclusion is not supported by the evidence for the reason that the ticket itself clearly and unmistakably indicates it was not addressed to defendants but to “Wm. Holmes '% Mrs. Maurice Shoultz”.
Clay Prieto, member of plaintiff partnership, testified that all of his dealings relative to sale of the material was conducted with Holmes and that at no time did he contact or negotiate with Mrs. Shoultz until after the last materials had been delivered. His testimony leaves us with the distinct impression that he sold Holmes the material not because defendants had assumed liability for Holmes’ account, but for the reason that from his past dealings with defendants, he assumed defendants would pay the account if Holmes did not. The following excerpt from his testimony is deemed significant:
“Q. Did Mrs. Shoultz ever say that this was purchased for her job? By that, I mean * * * when you talked to her on the two occasions, did she ever say that this material was to be paid for by her to you ? A. No, she didn’t.
“Q. And it’s your testimony that this was sold, or was to be sold direct to the Schoultz’s? A. That was my understanding with Holmes, and as far as the Schoultz’s were concerned, she has bought several times from me and I have had no trouble with her and I assumed it would be the same this time.”
As further evidence of the fact that defendants were the parties to whom the credit had been extended, plaintiff points .to a l.etter from Mrs. Shoultz dated October 22, 1956, addressed to plaintiff in which Mrs. Schoultz refers to the account in question as “my bill”, said letter reads in full as follows:
“Covington, La.
October 22, 1956
“Prieto Lumber Co.
“Mr. Prieto:
“If you would have mailed my bill to me as I ask you to do in my conversation on the telephone you would have been paid long before now. .Why send it to verious others and at at this date get around to mailing me one. Looks like you have turned it over to Mr. Pfeifer and he in turn turned it over to the court so now the only thing to do is wait and see what they say to do. It will be paid in due time.
“Yours truly,
Mrs. Maurice Schoultz”
Viewed in the light of the circumstances of this particular case, it cannot be logically argued that the foregoing letter constitutes an admission by Mrs. Shoultz that she was personally responsible for the account in dispute. Mere use of the words “my bill” under the circumstances which preceded the writing of said letter does not constitute an admission that the material in question was purchased by Mrs. Shoultz. It must be recalled that at the time Mrs. Shoultz wrote the letter in question, plaintiff had recorded a lien against defendants’ property which said lien was still outstanding and *861 effective and would have to be disposed of in order to free the property of the encumbrance resulting therefrom. Although the lien was not of defendants’ making, it, nevertheless, operated against defendants’ said property and rendered said property amenable to satisfy and discharge same. Considering these circumstances, when Mrs. Shoultz used the words “my bill” in the letter of October 22, 1956, she did not refer to an obligation resulting from her purchase of the material but to a charge or obligation to which her property had become subjected by operation of law flowing from the recordation of plaintiff’s lien for the material sold Holmes and used by Holmes on defendants’ residence. The bill in question was the obligation of defendants only in the sense that their property was subject to plaintiff’s lien.
Mrs. Shoultz testified without equivocation that at no time on or prior to June 2, 1956, did she agree to become personally obligated to plaintiff for the material sold Holmes. Her testimony is further to the effect that she did not even discuss the matter with any representative of plaintiff partnership until she was informed that Holmes had not paid the account and that she was responsible because the material had been used in the construction of her dwelling.
The trial court found as a fact that the material was sold to Holmes. From the foregoing, we deem his conclusion in this regard imminently proper and it will not be disturbed.
This brings us to a consideration of plaintiff’s alternate contention that defendants’ present position is inconsistent with that assumed in defendants’ suit against Holmes and that the allegations made in defendants’ action against Holmes constitutes judicial estoppel against defendants.
The pleadings in the suit which defendants filed against Holmes clearly states that Holmes is indebted to defendants in the sum of $686.71, being the amount which petitioners (Mr. & Mrs, Shoultz) “have to pay to Poole Lumber Company of Coving-ton, Louisiana, and to Prieto Lumber Company of Mandeville, Louisiana, for materials purchased and received by defendant from them.” (Emphasis supplied.)
At the time these allegations were made in defendants’ suit against Holmes, the lien filed by plaintiff against defendants’ property was still in force. The language involved does not constitute and cannot be construed as an admission or acknowledgment that defendants were purchasers of the materials involved. Use of the words “what is owed to Prieto Lumber Company”, in defendants’ suit against Holmes, is followed by the words “for materials purchased and received by defendant (Holmes) from them (Prieto Lumber Company)”. Thus, said allegations were merely allegations indicating defendants’ awareness of their potential liability to plaintiff under the outstanding lien.
Judicial confession is defined in Article 2291, L.S.A.-C.C., as a declaration which a party makes in a judicial proceeding. It amounts to full proof against the party making it and it cannot be revoked unless it be proved to have been made through an error in fact. It cannot be revoked for error of law.
In interpreting the provision of the foregoing codal article, it was held in the landmark case of Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L.R.A. 1915A, 200, that the judicial confession therein referred to relates only to a judicial confession made in the suit itself, either in the pleadings or the evidence for the purpose of dispensing with the taking of evidence on the fact admitted and that it has no reference to admissions or confessions made in other suits. It further holds that admissions or confessions made in other suits are classified only as extrajudicial confessions which are admissible in evidence but which are not conclusive pre *862 sumptions and do not operate an estoppel against the party making them.
We also deem it appropriate to quote with approval the following language appearing in Sun Oil Co. v. Smith, 216 La. 27, 43 So.2d 148, 157:
“ * * * it is now the well settled jurisprudence of this state that only admissions or allegations made in the same judicial proceedings effect a judicial estoppel; that admissions made in a judicial proceeding other than the one in which the plea of estoppel is urged operate as an estoppel against the one making the admission only when the one urging the plea, has relied upon them and has been deceived, ■'misled, of damaged by such reliance, and that such admissions are evidence but do not of themselves create an es-toppel. Farley v. Frost-Johnson Lbr. Co. [supra]; Tyler v. Walt, 184 La. 659, 167 So. 182; Sanderson v. Frost, 198 La. 295, 3 So.2d 626; Robinson v. Hunt, 211 La. 1019, 31 So.2d 197; Succession of Land, 212 La. 103, 31 So.2d 609; Janney v. Calmes, 212 La. 756, 33 So.2d 510.”
The statements relied upon by plaintiff as establishing judicial estoppel against defendants were not made in the present suit. In this connection, we observe that in the case at bar, defendants very forcibly deny being the purchaser of the materials for which recovery is sought herein. Even if the allegations contained in defendants’ suit against Holmes could reasonably be construed as an admission that defendants were the actual purchasers of the materials (a conclusion we do not entertain), it would avail plaintiff nothing for, having been made in another suit to which plaintiff was not a party, said allegations of themselves would not create an estoppel in favor of plaintiff. In such circumstances, it would be incumbent upon plaintiff to show that plaintiff has relied thereon and as a result of said reliance has been misled, deceived or damaged. Sun Oil v. Smith, supra.
The record is devoid of proof showing that plaintiff relied in any manner or to any degree upon the statements made in defendants’ suit against Holmes. Plaintiff filed its lien against defendants’ property before the suit was filed and the evidence convinces us beyond doubt that it was the filing of plaintiff’s lien which prompted defendants to file suit against Holmes in an effort to protect themselves against loss in the event defendants should ultimately be forced to pay Holmes’ debt to free their property of the legal effects of plaintiff’s lien.
For the reasons herein assigned, the judgment of the lower court rejecting plaintiff’s demand against defendants is affirmed.
Affirmed.